# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## BALDWIN *v.* BROWN.

### Original opinion delivered March 3, 1924.

1. APPEAL AND ERROR—CONFLICT BETWEEN DECREE AND CLERK'S CERTIFICATE.—Where there is a conflict between the recital of the decree appealed from and the certificate of the clerk, the former must prevail.

2. APPEAL AND ERROR—PRESUMPTION FROM ABSENCE OF TESTIMONY.—Though the evidence in a chancery case on appeal is so conflicting that the court is unable to determine where the preponderance lies, yet, where a portion of the testimony heard by the chancellor is not in the transcript, it will be presumed that the decree is correct.

3. APPEAL AND ERROR—ADMISSION OF INCOMPETENT EVIDENCE.—Though incompetent evidence was admitted in a chancery case, it will be presumed that the court gave consideration only to competent and revelant evidence.

4. EQUITY—RELIEF GRANTED.—The statement of facts, and not the prayer for relief, constitutes the cause of action, and the court may grant any relief that the pleaded facts warrant under a prayer for general relief, or without any prayer at all; but the court will not suffer the plaintiff to take a decree that is not responsive to the issues nor justified by a full development of the case by the testimony.

5. CANCELLATION OF INSTRUMENT—REMOVAL OF INCUMBRANCE.—Where plaintiff sued to cancel a deed of land as procured by fraud, and made a party thereto one who in good faith held a mortgage on the land, she was entitled to recover from her grantee the amount required to redeem the land from the mortgage, without first paying the mortgage debt.

6. APPEAL AND ERROR—LIMITATION—CROSS-APPEAL.—Where certain defendants appealed in the lower court from a decree canceling as fraudulent a deed executed by plaintiff, but foreclosing a mortgage executed by one of the defendants to an innocent mort-

gagee, and plaintiff prayed a cross-appeal in the lower court from the decree of foreclosure, but the transcript was not filed in the Supreme Court within 90 days, as required by Crawford & Moses' Dig., § 2135, the subsequent granting of an appeal to defendants under § 2140, *Id.*, did not operate to perfect plaintiff's cross-appeal against the mortgagee-defendant who did not appeal.

7. APPEAL AND ERROR—TIME FOR APPEALING.—While a cross-appeal, under C. & M. Dig., § 2166, may be granted to an appellee against an appellant, or any co-appellee, at any time before the trial of the cause in the Supreme Court, an appeal by an appellee against a party who has not appealed is in effect an original appeal and must be prayed within six months from the rendition of the judgment.

8. FRAUD—REMEDIES.—One induced to sell his land by false representations may sue for a rescission of the contract, or for damages sustained, or for rescission and damages where complete relief cannot be given by rescission alone.

9. EQUITY—DECREE UNDER GENERAL PRAYER.—In order to entitle the plaintiff to a decree under the general prayer different from that specially prayed, the allegations relied on must not only be such as to afford a ground for the relief sought, but they must have been introduced in the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed, otherwise the court would take the defendant by surprise.

10. CANCELLATION OF INSTRUMENTS — RELIEF UNDER GENERAL PRAYER.—Where a vendor, suing to cancel a deed to his vendee for fraud, joined as parties third persons alleged to have participated in the fraud, but asked only that her deed be canceled and for general relief, she was not entitled to personal judgment against such third persons.

Appeal from Washington Chancery Court; *Ben F. McMahan,* Chancellor; affirmed.

*W. N. Ivie* and *J. V. Walker,* for appellants.

1. The alleged false and fraudulent representations, both under the allegations of the complaint and under the proof, all relate only to the value of the seven gold bonds of the Southwest Oil and Live Stock Association given as a consideration for the purchase of lands. There is no allegation or proof of confidential relationship between Baldwin and appellee, nor of any superior knowledge on his part as to the market value of the bonds. Representations that relate merely to the

value of property, even if untrue, do not give the person
to whom made a cause of action for damages against the
party making them, nor a cross-action by way of recoup-
ment or set-off. Smith on Law of Fraud, § 30; 76 Me. 223;
46 Minn. 463. Not only did Baldwin give appellee, as
she herself admits, the opportunity to investigate the
value of the bonds, but advised her to make such investi-
gation. 3 Wyo. 356; 163 Ill. 17; Smith, Law of Fraud,
§ 34; 82 S. W. 433; 99 Ark. 438, 442; 11 Ark. 58; 19
Ark. 522; 46 Ark. 337; 47 Ark. 148; 95 Ark. 375.

2. There was no justification in the pleadings, even
as finally amended, nor in the proof, for a personal
judgment against Hurst, F. L. Bradley and Josephine
Bradley. Josephine Bradley was a *bona fide* purchaser
for a valuable consideration. 132 Ark. 158; 145 Ark. 121.

*J. W. Grabiel,* for appellee.

1. It is seldom that fraud can be proved by direct
evidence, because of the difficulty arising from its nature,
and circumstances enter largely into the proof.      130
Ia. 513, 114 A. S. R. 443; 4 Wall. 463. But the allega-
tions of fraud in this case were proved as completely as
could be, short of a full and complete confession.

2. To render one liable for damages in an action
for deceit, it is not necessary that he shall have derived
any benefits from the deception, or have colluded with
the person who was so benefited, nor that he should
have any interest in the contemplated transaction, or
the subject-matter thereof, or in making the representa-
tion, or expected any benefit. 12 R. C. L. 394, par. 143.

3. The liability of each of the defendants, Bradley,
Hurst and Baldwin, is clearly established. Even if
Baldwin had made no misrepresentations, he would be
liable, because he is bound by what the others said. 21 Vt.
129, 52 Am. Dec. 46; 12 R. C. L. 403, §§ 150, 151; *Id.* 402;
*Id.* 429, § 176. Hurst, when Mrs. Brown was insisting
that he disclose all the information he had relative to the
bonds and the company that issued them, was bound to do
so, and he could not avoid responsibility by stating only
those things that were favorable to the matter in hand.

Any concealment of facts which he knew would cause her to distrust his opinion or advice rendered him liable for fraudulent misrepresentations. 12 R. C. L. 310; 229 Mo. 27. While an express stipulation or warning may purge silence of its fraudulent import, yet there must be neither active concealment nor representations calculated to throw the other party off his guard. 9 Conn. 107. The rule that one may not rely upon representations of value or cost, but rather must .exercise his own judgment, does not apply where the parties do not stand on an equal footing, especially where there is a relation of confidence or trust between them, or where one is fraudulently prevented from making inquiries. 12 R. C. L. 381, § 132; *Id.* 283, § 47. For rule as to whether statements relative to the value of property are mere expressions of opinion, or are material representations, see 99 Ark. 438; 162 Ill. 417. The fact that Baldwin told Mr. and Mrs. Brown that they should investigate, which occurred after they suggested a time to investigate, does not remove the taint of fraud from his dealing with them. It is significant that he told them what they should do, where they should investigate, and directed their inquiries to the parties who were working with him. And the fact that these parties made reference to the source of their information does not remove the taint. 12 R. C. L. 441, § 186; 2 Pomeroy, Eq. Jur., 4th ed., 1856, §§ 895, 896.

McCulloch, C. J. The appellee, Mrs. Almyra C. Brown, was, on February 9, 1921, the owner of a farm in Washington County, containing 285 acres, which is the subject-matter of this controversy, and on that day she conveyed it to Thomas E. Baldwin, the sum of $7,000 being recited in the deed as the consideration for the conveyance. This consideration was in fact paid by the delivery to Mrs. Brown by Baldwin of seven so-called gold bonds of the Southwestern Oil & Livestock Association, of Fort Worth, Texas, an unincorporated concern doing business as a common-law trust. The bonds were each of the denomination of $1,000, bearing

interest at eight per centum per annum, payable annually. Baldwin conveyed the land to Josephine Bradley, wife of F. L. Bradley, by deed dated February 12, 1921, but which was not filed for record until February 28, 1921; and on the last-mentioned date Mrs. Bradley mortgaged the land to Mrs. Lucy Wilson to secure a loan of money in the sum of $1,200. This mortgage was filed on the same date. On that date (February 28, 1921) Mrs. Brown instituted this action in the chancery court of Washington County against Baldwin to cancel the conveyance on account of alleged misrepresentations concerning the value of the bonds which were delivered as the consideration for the conveyance. S. K. Leskey was joined as defendant in the suit, on an allegation that he claimed a lien on the land, but it does not appear that Leskey was ever served with process, and he has passed out of the suit. Appellee filed a *lis pendens* under the statute on the day that the suit was instituted. At that time appellant was not apprised of the conveyance from Baldwin to Mrs. Bradley, nor of the mortgage executed by Mrs. Bradley to Mrs. Wilson. Subsequently appellee amended her complaint and joined as defendants Mrs. Bradley and Mrs. Wilson, alleging that neither of them were innocent purchasers for value, and also bringing in, as parties defendant, F. L. Bradley and George A. Hurst, alleging that they participated in the fraudulent misrepresentations by aiding Baldwin in inducing appellee to convey her land for the consideration named. Mrs. Wilson filed an answer, denying that she had knowledge of the fraud alleged to have been perpetrated on appellee, and she asked that appellants, Baldwin, Bradley and Hurst, be made parties, and that, if the court canceled her mortgage, she have judgment over against appellants for the amount of her debt.

The cause was heard by the court upon the pleadings and exhibits and the depositions of numerous witnesses, whose names were set forth in the decree, and the court found in favor of appellee upon the charge

of fraudulent misrepresentations, and canceled her deed to Baldwin and the deed from Baldwin to Mrs. Bradley, but found that Mrs. Wilson was an innocent mortgagee, and the decree vested title to the land in appellee, subject to Mrs. Wilson's lien as mortgagee. The court also rendered a decree in favor of appellee for the recovery from Baldwin, Bradley and Hurst of the amount of Mrs. Wilson's mortgage debt, with interest.

Baldwin, Bradley, Mrs. Bradley and Hurst prayed an appeal, which was granted by the chancery court, and appellee also prayed an appeal from the decree in favor of Mrs. Wilson. This decree was rendered on November 23, 1922, and none of the appeals were perfected within ninety days, as required by statute, but on May 7, 1923, Baldwin, Bradley, Hurst and Mrs. Bradley filed an authenticated copy of the record with this court and prayed an appeal, which was granted by the clerk of this court. Appellee obtained a cross-appeal on November 11, 1923.

There is a conflict in every phase of the testimony, and we are unable to determine where the preponderance lies, for the reason that the deposition of one of the witnesses, J. C. Barthell by name, is omitted from the transcript. The record entry of the decree recites the name of this witness as one of the deponents in the trial of the case, but his deposition is not in the record. The clerk certifies that the record is complete, but, there being a conflict between the recital of the decree and the certificate of the clerk, the former must prevail. *Weaver-Dowdy Co.* v. *Brewer,* 129 Ark. 193; *Massey* v. *Kissire,* 149 Ark. 222. The absence from the transcript of part of the testimony in the case raises the presumption that the decree was correct. It is therefore unnecessary to discuss the testimony in further detail.

It is insisted by appellant that some of the testimony of the witnesses was incompetent, but we must indulge the presumption that the court only gave consideration to such testimony as was competent and relevant. *Niagara Fire Ins. Co.* v. *Boon,* 76 Ark. 153.

It is also contended that the personal decree in favor of appellee for recovery of the amount of Mrs. Wilson's mortgage debt is erroneous on its face, for the reasons, (1) that appellee's complaint contained no prayer for such relief, and (2) that appellee had no right of action for such recovery until she was compelled to pay the debt.

It is true that the complaint contained no specific prayer for such relief, but it contained a prayer for general relief, in addition to the specific prayer for cancellation of all the deeds, including the mortgage to Mrs. Wilson.

The rule established by decisions of this court is that the statement of facts, and not the prayer for relief, constitutes the cause of action, and that the court may grant any relief that the pleaded facts warrant under a prayer for general relief, or without any prayer at all. *Kelly's Heirs* v. *McGuire,* 15 Ark. 555; *Chaffee* v. *Oliver,* 39 Ark. 531; *Sannoner* v. *Jacobson & Co.,* 47 Ark. 31; *Ashley* v. *Little Rock,* 56 Ark. 391; *Waterman* v. *Irby,* 76 Ark. 551. An exception to this rule is that "the court will not suffer the defendant to be taken by surprise and permit the plaintiff to take a decree that is not responsive to the issues and which is not justified by a full development of the case by the testimony." *Mason* v. *Gates,* 90 Ark. 241. This case falls within the rule and not within the exception. Appellants were made parties at the request of Mrs. Wilson to answer for alleged fraud in inducing her to accept a mortgage on the land. They were also made parties by appellee, and the question of their conduct in obtaining the deed from appellee and in obtaining the loan from Mrs. Wilson were issues directly raised by the pleadings. For that reason there could have been no surprise in granting relief on the general prayer. In fact, a personal decree for recovery of the amount of the incumbrance wrongfully placed on the land was the only available relief against appellant Hurst, for he was not an actual party

to the conveyance and was not a proper party to this litigation for any other purpose.

.   The right of action was not prematurely sustained, even though appellee had not paid the mortgage debt, for the recovery of this amount was a part of appellee's damage in having her land wrongfully incumbered by the mortgage to Mrs. Wilson. She could not obtain a cancellation of the mortgage for the reason that Mrs. Wilson was an innocent party, but she was entitled to the only available reparation, which was to allow her to recover the amount necessary to redeem from the mortgage—otherwise she is without relief.

Appellee did not perfect her original appeal from the decree in favor of Mrs. Wilson within ninety days after the rendition of the decree, as required by statute (Crawford & Moses' Digest, § 2135); in fact, she did not perfect the original appeal at all. If the transcript had been filed by any of the appellants within the prescribed time, this would have been sufficient to perfect all of the appeals which had been granted by the court below, but no transcript was filed by any of the appellants within the prescribed time. The present appellants—Baldwin, Bradley, Hurst and Mrs. Bradley—abandoned their original appeal, and, within six months, took a new appeal as provided by statute, Crawford & Moses' Digest, § 2140. The granting of this appeal to the appellants did not have the effect of perfecting the original appeal granted to the appellee by the lower court. The statute (Crawford & Moses' Digest, § 2166) provides that a cross-appeal may be granted to an appellee against an appellant or any co-appellee at any time before the trial of the cause in the Supreme Court. Appellee was not entitled to a cross-appeal against Mrs. Wilson, for the reason that the latter was not an appellant in the case, nor a co-appellee. The controversy between appellee and Mrs. Wilson concerning the foreclosure of the latter's mortgage was distinct from the controversy between appellee and the appellants, therefore appellee was not entitled to a cross-appeal. *Shapard*

v. *Nixon,* 122 Ark. 530; *Meyers* v. *Linebarger,* 144 Ark. 389. It has been the practice here, in instances where a cross-appeal was improperly granted within the period of six months allowed by statute for obtaining original appeals, to treat the cross-appeal as an original appeal, but, in the present instance, the cross-appeal was not granted until after the expiration of six months from the date of the rendition of the judgment. Therefore it was too late to operate as an original appeal.

It follows from what we have said that the cross-appeal of appellee must be dismissed and that the decree of the chancery court against appellants must be affirmed. It is so ordered.

## Opinion delivered April 21, 1924.

HART, J., (on rehearing). The majority of the court is of the opinion that, under our decisions, the chancery court erred in rendering a personal judgment against George A. Hurst under the pleadings, and that his motion for rehearing in this respect should be granted.

The original bill filed by Mrs. Brown contains a specific prayer asking that the deed from herself to Thos. E. Baldwin be canceled for fraud and the contract for the sale of her land be rescinded. The bill also contains a prayer for general relief. Subsequently the plaintiff filed an amendment to her complaint. In it she stated that Thos. E. Baldwin, F. L. Bradley, and George A. Hurst had conspired together to defraud her out of her land, and asked that Bradley and Hurst be made defendants to the suit.

She further alleged that, in order to carry out their conspiracy, Baldwin had conveyed the land to Josephine Bradley, the wife of F. L. Bradley, and that she had mortgaged the land to Lucy Wilson for $1,200, and that she had placed the mortgage of record by the procurement of said Baldwin, Bradley and Hurst; that Lucy Wilson had full knowledge of all the facts set out in the complaint, and that her mortgage is null and void as against the rights of the plaintiff.

The prayer of the amendment to the complaint is that, upon final hearing of the case, the deed from Baldwin to Josephine Bradley and the mortgage from Josephine Bradley to Lucy Wilson be by the court canceled, and the title of the plaintiff be quieted against all these parties. Josephine Bradley was also made a party defendant, and there was also a prayer for general relief.

One who has been induced to sell his land by false representations may sue for a rescission of the contract or may sue for damages sustained by reason of the false and fraudulent representations, or upon proper allegations may sue to rescind the contract and to recover damages where complete relief could not be granted in a suit for a rescission of the contract. *Matlock* v. *Reppy*, 47 Ark. 148.

The plaintiff, as she had a right to do, specifically asked for a rescission of the contract, and claimed that Mrs. Wilson was not an innocent holder of the mortgage. It is true that her complaint contained a prayer for general relief, but that did not entitle her to a personal judgment against Hurst for damages.

This court has approved the statement of the rule by Mr. Daniell in his work on Chancery Pleading & Practice, which is as follows: "It is to be observed that, in order to entitle the plaintiff to a decree under the general prayer, different from that especially prayed, the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed; otherwise, the court would take the defendant by surprise, which is contrary to its principles." *Cook* v. *Bronaugh*, 13 Ark. 183; *Rogers* v. *Brooks*, 30 Ark. 612; and *Mason* v. *Gates*, 90 Ark. 241.

In the case first cited the plaintiff brought suit for the specific performance of a contract for the purchase of certain slaves. The bill also contained a prayer for general relief. The proof showed that the plaintiff was

a lawyer, and professional services by himself for the defendant were proved as a consideration for the contract for the purchase of the slaves, which was sought to be specifically enforced. The circuit court, sitting in chancery, refused to decree the specific performance of the contract, but rendered judgment in favor of the plaintiff against the defendant for the value of his professional services. The Supreme Court held that the court below correctly refused to decree the specific performance of the contract, but erred in rendering a judgment in favor of the plaintiff for his professional services. The rule laid down by Mr. Daniell above was quoted with approval.

This court, however, held that the circuit court went beyond the state of the case before it, and said that, if the plaintiff was doubtful about his right to recover upon the state of the case presented, he should have set forth the facts to entitle him to recover compensation for his services and have made his prayer in the alternative, so that, if relief should be refused him upon one of the grounds alleged, he might be decreed relief upon the other.

The court further said that, instead of relying solely upon the right of specific performance to his contract, if the plaintiff had set forth his claim to compensation for special services and made a specific alternative prayer for relief, or even under the general prayer, the court would not say that he should not recover. In the case before us the plaintiff relied alone upon her right of rescission; and the granting of other relief might tend to surprise the defendant.

In the second case cited, W. H. Rogers, as administrator of the estate of Mary Rogers, brought ejectment against Brooks for certain land. Brooks filed an answer and equitable counterclaim. He alleged that the land had been purchased under an agreement that the plaintiff and defendant should share equally in it. The prayer of the answer was that the deed to the land which had been taken in the name of Mary Rogers be declared

to be a fraud upon the rights of the defendant; that she be declared a trustee of the land for her husband, William H. Rogers, and that the defendant, Brooks, have an accounting of the partnership matters between the plaintiff and the defendant; that the payments made by the defendant to the plaintiff be applied to the payment of the purchase money for one-half of the land, and that defendant have judgment against the plaintiff for the balance due him on said accounting and for other proper relief. It was proved at the trial that Brooks had furnished $2,000 to be applied towards the purchase price of the land in question, and that Rogers had purchased another tract of land with it. The court below charged this sum as a lien upon the outside tract. The court held that there was nothing in the pleading to warrant this decree.

In the last cited case, Gates brought suit in the chancery court against Mason to quiet his title to certain lots which were asserted to be in the possession of the plaintiff, and the defendant answered and denied that the plaintiff had been in possession of the lots claimed by him. His answer was made a cross-complaint, and contained a prayer that the suit of the plaintiff be dismissed for want of equity, and for such other and further relief as might be necessary. This court held that, under the general prayer of the answer, the defendant was not entitled to have his title to the lots quieted. The rule laid down by Mr. Daniell, as above stated, was quoted with approval; but the court said that, inasmuch as the defendant did not ask that his title be quieted, this issue was not made by the pleadings, and was in effect inconsistent with the relief asked. It was also said that the testimony was not developed along this line, and that this court on appeal could not make a proper finding thereof. In discussing the question the court said: "But while, in modern procedure, a great liberality is given to the construction and effect of pleadings, so that the substance may take the place of form and the true rights of the parties enforced as they can be actually

seen, yet it is necessary that each party be given full knowledge of what the issues are, so that he can develop and present the evidence of his side of the case, to the end that the full truth can be brought before the court. The deficient relief may be supplied under the prayer for general relief, but the court will not suffer the defendant to be taken by surprise, and permit the plaintiff to take a decree that is not responsive to the issues and which is not justified by a full development of the case by the testimony.''

The result of these decisions is that, if a plaintiff asks for a particular relief, and other relief, he can have no relief inconsistent with such particular relief, although founded upon the complaint. See also *Norris* v. *Johnson*, 151 Ark. 189, where it was held that, where liability for the rents upon lands of an estate was not made an issue in a suit to construe a will, and was not fully developed in the evidence, it was error to render judgment for such rents.

It is conceded that the rendering of a personal judgment against Hurst in favor of the plaintiff is not the special relief sought by her, and, if the decree in this respect is to be sustained, it must be under the general prayer for relief. As we have just seen, under a general prayer the relief given must be agreeable to the case made by the complaint and not different from it or inconsistent with it.

In the case of *Cook* v. *Bronaugh, supra,* the court said that, although it may from the proofs be apparent that the plaintiff is entitled to other relief, yet, unless the bill is so framed as to put such facts at issue, the court will not decree such further relief; for it would be decreeing upon an issue not before the court and to which the proofs could not properly apply, and would tend to surprise the defendant.

No personal judgment is asked against Hurst. The mortgage of Mrs. Wilson is specifically alleged to have been given in fraud of the rights of the plaintiff, and Mrs. Wilson is alleged to have participated in the fraud.

It cannot be supposed that the court understands what relief the plaintiff desired better than she did herself; or that the rendition of the personal judgment could not occasion any surprise to Hurst.

Under the allegations of the bill, Hurst was not required to make any proof as to the amount of damages suffered by the plaintiff. He had a right to meet her on the issues which she presented in her pleadings. There is no bill of exceptions or other method of bringing in the record the testimony, and the presumption is that the fact would only sustain a decree within the scope of the pleadings. Hurst might have found out that he himself had been deceived by Baldwin and was willing that Mrs. Brown should have the contract of sale rescinded and her deed to Baldwin canceled. In any event, the state of the pleadings did not apprise him that any personal judgment would be asked against him, and we think that to grant this relief was inconsistent with the relief asked in the bill.

As above stated, if the plaintiff was doubtful about what her rights were, she would have asked alternative relief in her prayer. She alleged in positive terms that Mrs. Wilson was a party to the alleged fraud. If she was in any doubt about this matter, she could have asked alternative relief in the way of a personal judgment against the other defendants, in case the court should find that Mrs. Wilson had advanced the money in good faith and had taken the mortgage to secure it. Having planted herself upon the issue that Mrs. Wilson was a party to the fraud, and that her mortgage should be canceled, we do not think it would be consistent with the state of the pleading to render a personal judgment against Hurst for damages. There should have been something in the pleadings to apprise him that this would be an issue in the case, so that he might meet it with the proof. Otherwise, it will be presumed that the proof introduced was such as to meet the issues made by the pleadings.

It follows that a rehearing will be granted to Hurst with respect to the personal judgment against him in favor of the plaintiff, and this part of the decree will be reversed, and the action against him in this respect dismissed.

Although the other defendants have not joined Hurst in his motion for rehearing, what we have said with respect to Hurst also applies to the personal judgment in favor of the plaintiff against Thos. E. Baldwin, F. L. Bradley and Josephine Bradley, and that part of the decree in which a personal judgment against them is rendered is also reversed, and the action against them in this respect is dismissed.

The CHIEF JUSTICE and Mr. Justice SMITH dissent.

Opinion delivered December 1, 1924.

HART, J., (on second rehearing). The opinion in this case on the former rehearing held that the plaintiff, under a prayer for general relief to cancel her deed to Baldwin for fraud, was not entitled to recover a personal judgment for damages against Hurst and the other defendants.

Counsel for appellee then represented to the court that he had asked and obtained leave of the court to amend the prayer of her complaint by interlineation, to show that she had asked judgment for damages against the defendants. This court then made an order to continue the case to enable the parties, or either of them, to obtain from the chancery court, "in accordance with the decisions of this court in *Hagerman* v. *Moon,* 68 Ark. 279, a correction of the record, if any error is found therein, with respect to the interlined words in appellee's amendment and supplement to her complaint, and to bring into this court on certiorari any order made by said chancery court with respect to such correction."

In *Hagerman* v. *Moon, supra,* this court held that parties aggrieved by errors in the record of the court below, and desiring to have them corrected, should apply to that tribunal for correction, and not to this court.

There it was contended in this court by the defendant that the action was not submitted upon the amendment of the complaint, but upon the complaint and exhibits and the answer and exhibits. The record, however, showed that the defendant was in error, and that the case was submitted upon the amendment in the court below, and this court held that it should be governed by the record.

In the exercise of our lawful discretion in the premises, however, we set aside the submission in this court and continued the matter, in order that the parties, or either of them, could apply to the chancery court for a correction of the record, so as to show that the case was submitted to the chancery court on an amendment to the complaint allowing the plaintiff to ask for personal judgment for damages against Hurst and the other defendants.

The record shows that the chancellor who originally tried the case was dead when the application to amend the record was made. His docket showed that the plaintiff was given permission to amend her complaint by interlineation, but it does not show in what respect. Parol evidence was introduced by appellee tending to show that the interlineation granted by the court was to permit the plaintiff to ask for personal judgment for damages against Hurst and the other defendants.

On the other hand, the evidence for the appellant tends to show that no such amendment was asked for or made by the plaintiff to her complaint. The evidence for appellant tends to show that the interlineation which the chancery court granted by the notation in question on his docket was asked for because the contention of the plaintiff was that the allegations of the complaint were sufficient to connect Bradley and Hurst with the issues of fraud involved in the case, and that the only thing mentioned in the argument of the matter was that the complaint did not even contain a prayer for any relief against these parties.

I am of the opinion that the only amendment that was intended to be made to the record in the court below

was to allow a *nunc pro tunc* entry, if the facts should warrant that course, on the record, to show that the plaintiff was permitted to amend her complaint so as to ask a judgment for damages against Hurst and the other defendants.

In *Bobo* v. *State,* 40 Ark. 224, this court held that parol evidence of a judgment which was omitted from the record is sufficient to authorize a *nunc pro tunc* judgment; but that such correction, after the term at which the original judgment was rendered, should be made with caution and after satisfactory evidence. This rule has been steadily adhered to ever since.

Tested by this rule, I do not think that the evidence is of that clear, convincing and decisive character that is necessary to establish a *nunc pro tunc* order. No doubt all the parties are testifying honestly as to their recollections about the matter, but the testimony of the witnesses is flatly contradictory, and they are of equal credibility. Hence it cannot be said that the fact that the court granted the plaintiff leave to amend her complaint by interlineation so as to show that she asked a personal judgment against Hurst and the other defendants was established by clear and satisfactory evidence. Then the case must stand before us as it did when the original opinion on rehearing was delivered, and, no specific relief of that character having been asked against Hurst and the other defendants, the court was not warranted in rendering a personal judgment against them under the prayer for general relief.

I do not think that the question of whether or not the interlineation was in the complaint when the transcript was first filed in this court and was left out of the transcript by mistake is controlling. Even if the interlineation had been there, if the plaintiff was not given leave to make it, it could not be availing here. Unless the amendment was made by leave of the court, it could not have influenced the court in the premises. In other words, if the court did not give the plaintiff leave to amend her complaint in the respect in question,

it is manifest that the court rendered a personal judgment against Hurst and the others under the belief that it had the power to do so under the prayer for general relief.

Judge HUMPHREYS concurs with me in the views expressed above. Therefore we are of the opinion that the motion of appellee for a rehearing should be denied.

Judge Wood thinks it should be denied because a preponderance of the evidence shows that the interlineation in question was not in the complaint at the time the transcript was filed in this court.

Thus it results that the majority of the court, for different reasons, are of the opinion that the motion of appellee for rehearing should be denied, and it is so ordered.

McCULLOCH, C. J., and SMITH, J., dissent.