DAVIDSON *v.* PEYTON.

4-3763

Opinion delivered March 11, 1935.

574

*Dene H. Coleman,* for appellants.

*R. D. Harris* and *John C. Ashley,* for appellee.

BUTLER, J. Lytle Peyton, appellee, brought this action to reform a certain deed of trust and for foreclosure thereof. He alleged that in February, 1932, J. P. and Mabel Davidson were indebted to him in the sum of $8,240, evidenced by a note, to secure which a deed of trust upon certain lands was given; that this note and mortgage were in renewal of a note for $10,000 secured by mortgage of date December 14, 1929, and that, upon the execution of the mortgage of February 3, 1932, the original mortgage and note were satisfied of record. He alleged that the agreement between all parties was that a homestead of about ninety-nine acres which was included in the first mortgage should also be included in the second, and that certain other lands in addition to those mentioned in the first mortgage should be included in the second; that this was the consideration for the release of the first note and mortgage; that by intentional exclusion or mistake the said homestead was omitted from the last mortgage, and that with the homestead excluded the security is wholly inadequate. The prayer of the complaint was that the last mortgage be corrected and reformed so as to include the ninety-nine acre homestead, for judgment on the note with interest, and that a lien be declared upon the lands included in the mortgage as reformed, and that they be sold to satisfy the judgment.

The answer denied that the homestead was omitted from the last mortgage by mistake, but alleged that such omission was the result of an understanding between the defendants and the plaintiffs. It denied that the value of the lands included in the last mortgage was inadequate to secure plaintiff in the payment of his debt.

On the evidence adduced the court decreed in favor of Peyton. A number of preliminary motions and pleas were filed which were reserved by the court for judgment until the final decree. This decree overruled these motions and pleas and found "that the plaintiff's motion to amend his complaint, praying that the satisfaction of the deed of trust made and executed by the defendants on the 14th day of December, 1929, be set aside, should be granted, and the defendant's further prayer to have foreclosure on the lands embraced in said deed of trust and omitted from the deed of trust made and executed on the 3d day of February, 1932, excepting therefrom one acre on which is located the gin and gin property, should be granted."

The court further found that the plaintiff, Peyton, was entitled to judgment for $8,240 with interest, for taxes paid for the year 1933, and "that a lien should be declared upon the lands embraced in the aforesaid deed of trust dated February 3, 1932, and upon the additional lands in the deed of trust dated December 14, 1929, and not included in the deed of trust dated February 3, 1932, to secure said judgment, excepting therefrom one acre upon which the gin and gin property is located." Judgment was rendered accordingly, and lands ordered sold.

The jurisdiction of the court to reform an instrument so as to carry out the intention of the parties thereto is clear, (*Ft. Smith Milling Co.* v. *Mikles*, 61 Ark. 123, 32 S. W. 493), and relief will be granted where there is mutual mistake of the parties, or where there has been a mistake of one party accompanied by fraud or other inequitable practice by the other. *Welch* v. *Welch*, 132 Ark. 227, 200 S. W. 139. However, to justify the court in decreeing reformation, the evidence must be clear, unequivocal and decisive. *Barton Mansfield Co.* v. *Wells*, 183 Ark. 174, 35 S. W. (2d) 337, and cases cited therein.

As to the facts leading up to the cancellation of the first note and mortgage and the execution of the last, there is no dispute. Davidson, for several years prior to the execution of the $10,000 note, had from time to time borrowed money from Peyton which finally amounted to the sum above stated. To evidence this indebtedness he

executed a note secured by a mortgage on about 730 acres of land, including a tract of 100 acres which constituted his homestead and upon which he and his wife, Mabel Davidson, resided. On this homestead tract was a ginnery and store building. On or about February 3, 1932, Davidson had an opportunity to sell the mill and store building for $6,500. At that time he was indebted to the Bank of Barren Fork. Peyton agreed that the gin property might be sold, $3,000 of the purchase price to be paid to him as part payment on the Davidson note and that a new note for the balance and a new mortgage be executed. The gin and store were sold, Peyton paid $3,000, and the balance of the money from the sale was applied to the debt due the bank. A note for $8,240 was executed, and a new mortgage given which included all of the property mentioned in the first with the exception of the homestead. Three additional tracts of land aggregating about 200 acres were included in the new mortgage.

As to the value of the three farms included in the second mortgage which were not included in the first, the evidence is in conflict. These were called the Richardson place, the Wilkes-Cockrill place and the Victor place. Davidson said he had paid for these, $3,500, $1,200 and $300, respectively. No value was placed by appellee's witnesses on the Victor place. They placed the value on the Richardson place at from one thousand to twelve hundred dollars and on the Cockrill place from sixty to four hundred dollars. These witnesses valued the Davidson home place at from two thousand to twenty-five hundred dollars. The effect of the testimony in chief of J. P. Davidson is that, in consideration of the payment of $3,000 and the inclusion of three other tracts of land, it was his understanding that the homestead was not to be included in the last mortgage.

The testimony on behalf of the appellant relative to the value of the three additional tracts was to the effect that the Richardson place was worth from two thousand to twenty-five hundred dollars and the other additional property was worth one thousand dollars. In the testimony of Mr. Davidson, on direct examination appear

the following questions and answers: "Was it your understanding or agreement with Mr. Peyton that your homestead or homeplace, consisting of 99 acres more or less, was to be included in the present deed of trust? A. No, sir; it certainly was not. Q. Did you intend for it to be in the present deed of trust? A. No, sir." This testimony is far from showing that there was an understanding with Mr. Peyton that the homestead should not be included in the present deed of trust. Further on in Mr. Davidson's testimony on cross-examination, in endeavoring to explain why the homestead was omitted in reply to this question, "Now, what land was to be released when this new mortgage was executed to Mr. Peyton," he answered, "The land the gin was on"; and to the question, "That was the agreement," he answered, "Yes, sir." Mr. Wilson, the attorney who prepared the last mortgage, in stating what his instructions were from Peyton, said: "They had made a new deal and wanted a new mortgage drawn up like the old one except that the gin was to be left out." He stated that he prepared the mortgage and got the descriptions of the property to be included from deeds which Davidson brought to him; that he first endeavored to prepare the mortgage from the record; that he was informed by Peyton that the mortgage was not as contemplated. "He said he wanted all of the gin and gin property taken out. After I had prepared the second mortgage, he told me, if I could not draw it from the records, to have Davidson bring in the deeds"; that Davidson did this, and he prepared the descriptions from the deeds he presented; that the first he knew after the last mortgage had been prepared and executed, that there was any claim that it was not correct was when Peyton came to his office and told him that the home place had been left out; that he told Peyton that he intended to put in what was in the deed; that he did not remember telling Peyton that the homeplace was in the mortgage.

Mrs. Peyton, the wife of Lytle Peyton, acted as the agent of her husband because he was deaf and she could converse with him and make him understand better than others. She and her husband both testified in positive

terms that the agreement was that one acre of land on which the gin stood was to be released. They also testified that $3,000 of its sale price was to be credited on the note; that there was a store on the lot which was sold for $500, and that this sum and the $3,000 remainder of the purchase price of the gin were to be used by Davidson in paying the bank, and that Davidson was to make a new mortgage including all the lands in the first mortgage except the one acre and was to put in two additional small farms. This testimony is not contradicted by Davidson except by implication and is corroborated by the testimony of the cashier of the bank, who testified it was his understanding that one acre on which the gin stood was to be released, and that Davidson told him the reason the homestead was left out was that Peyton told him to leave out the "call" on which the gin property was located. Another witness said that Davidson told him that Peyton was "fixing" to foreclose, but would be disappointed. He thought the home place was in the mortgage but it was not.

The circumstances also corroborate the testimony of Peyton, for it is unreasonable that he would be willing to surrender $3,500 security and in addition to surrender the home place worth $2,500 more for the inclusion of additional lands which, at the highest value fixed by Davidson, were not worth more than $3,500.

It is clear that the satisfaction and release of the first note and mortgage securing it was primarily for the benefit of Davidson, and the exclusion of the homestead from the second mortgage was sufficient to warrant the trial court in setting aside the cancellation and satisfaction of the first mortgage and decreeing that it be foreclosed. The proof satisfies the rule first announced warranting the reformation of written instruments. The facts, as necessarily implied by the finding of the chancellor, are that there was a mistake on the part of Peyton, coupled with inequitable conduct on the part of Davidson, and this has been established by evidence which is clear, satisfactory and convincing.

Mrs. Davidson testified that, when the new mortgage was presented to her, she observed that her homestead

was not included and, for that reason, she signed the mortgage; that she would not have done so had it contained the homestead.

It seems to be the law that, unless the wife intends the homestead to be conveyed, courts have no authority to reform a deed of conveyance so as to include it. It was doubtless upon this theory that the trial court failed to decree the reformation of the deed in controversy, but allowed the appellee to amend the prayer of his complaint so that the satisfaction of the first mortgage might be set aside and the lands sold.

Under the court's view of the weight of the evidence, which we are unwilling to disturb, the decree worked substantial justice, and is therefore affirmed.