REALTY INVESTMENT COMPANY *v.* HIGGINS.

4-4219

Opinion delivered March 16, 1936.

*June P. Wooten,* for appellant.

*Dean, Moore & Brazil,* for appellee.

SMITH, J. On November 7, 1925, W. M. Carter subscribed for $1,250 stock in the Travelers Building and Loan Association of Little Rock. He borrowed a like amount from the association for which he gave his note and attached his stock as collateral security. As further security he executed a mortgage to the association upon certain lots owned by him in the city of Morrilton. The dues and interest payments had become delinquent when on December 4, 1930, the secretary of the association wrote Messrs. Dean, Moore, and Brazil, attorneys located at Morrilton, instructing them to institute foreclosure proceedings. M. H. Dean, a member of the above-named law firm, answered this letter by stating that suit had been filed as directed. The complaint prayed judgment for $1,206.87 and for $87.04 delinquent taxes which the association had paid.

Clifton Moose was the local agent of the association at Morrilton and collected the monthly dues from the association's members, who resided there. The law firm of which Dean was a member attended to the association's legal business in Morrilton and brought all of its foreclosure suits. Dean had been told by the president of the association, who resided in Little Rock, that Moose had charge of the association's loans in Morrilton, and the attorney was directed to follow Moose's orders in regard to them.

It appears that after obtaining the loan, Carter sold two of the mortgaged lots to Lugenia and Rosie Williamson, colored women, who are sisters. A third lot, described as lot 3, block 10, of Griffen's Addition to the

town of Morrilton, had been sold by him to Lena Higgins, a colored woman. These women were made parties defendant to the foreclosure suit.

It is certain that negotiations were entered into regarding this foreclosure suit, and that as a result of these negotiations, the Williamson sisters and Lena Higgins executed a mortgage on December 19, 1930, which was prepared by Dean and acknowledged before him as a notary public. This mortgage described the three lots which Carter had sold the women and in addition described a lot owned by Lena Higgins, which she had not bought from Carter, but which adjoined the lot she had purchased from him. After the execution of this new mortgage the foreclosure suit was dismissed, and the new mortgage was sent to the association's home office in Little Rock without explanation of its provisions. Lena Higgins had bought lot 3 subject to the mortgage from Carter to the association, but she was under no obligation to pay Carter's loan until she joined in the execution of the new mortgage which included her home as well as lot 3.

The new mortgage was executed on a printed form, but the following recital of its purpose and consideration was written into it: "The sale is on the condition that whereas we are justly indebted unto the said Travelers Building and Loan Association in the sum of thirteen hundred five and 31/100 ($1,305.31) dollars evidenced by bond and mortgage executed by W. M. Carter and wife to said Travelers Building and Loan Association under date of November 7, 1925, which bond was given for, and said mortgage secures a loan of $1,250, and this mortgage is executed by us to further secure said indebtedness * * *. The said Lena Higgins agrees to pay $16.66 payable on the 10th day of January, 1931, to June 10, 1931, inclusive, and said Lugenia Williamson and Rosie Lee Williamson agree to pay $16.66 the 10th day of January, 1931, and like amount on the 10th day of each month thereafter including June, 1931. After June 10, 1931, the total amount to be paid will be $16.66 each month until said indebtedness is paid."

· In the early part of 1932, the Pulaski Chancery Court appointed a receiver to take over the assets of the association. The Carter loan was among these; and, as the new mortgage had been executed subsequent to the institution of the original foreclosure suit, an amended complaint was prepared by the attorney for the receiver praying the foreclosure of the new mortgage, he signed the name of Dean, Moore and Brazil with his own as solicitors for the plaintiff. This complaint was filed November 1, 1932. Some time in 1933, a fire destroyed the building located on the lots sold the Williamson women, and when the insurance was adjusted, they were given credit for $900, and by order of the Pulaski Chancery Court, where the receivership was pending, the two lots were ordered released from the mortgage.

The second foreclosure suit was dismissed with prejudice on June 12, 1933, but was later reinstated on motion of the attorney for the receiver. On October 6, 1934, an additional amendment to the complaint was filed showing release of the Williamson lots because of the $900 credit and judgment was prayed for the balance of $379.78 then alleged to be due on the original loan to Carter. On November 24, 1934, the firm of Dean, Moore & Brazil filed an answer for Lena Higgins which raised the issues we are now called upon to decide. This answer alleged that the consideration for the mortgage which Lena Higgins had executed on her two lots was an agreement by her to make six payments of $16.66 each, and to pay an attorney's fee of $25. A number of pleadings were filed which do not elucidate the controlling issues and are therefore not discussed.

At the trial from which this appeal comes, Lena Higgins testified that when she was made a party to the original foreclosure suit she called on Mr. Moose and discussed the suit with him, and it was agreed that she should pay $100 on the mortgage indebtedness, and a fee of $25 for the attorney who had brought the foreclosure suit, and that these payments would discharge the lien of the mortgage against her property; but that she was required to give additional security for the payment

of this money, and that this was done by executing the new mortgage which this suit was brought to foreclose.

The testimony of Dean fully supports this contention. He testified that he was directed by Moose to prepare a mortgage to that effect, and that he did so. He further testified that the purpose, and, as he thought, the effect of the recital hereinbefore copied from the mortgage of Lena Higgins and the Williamson sisters was to require Lena Higgins to make monthly payments of $16.66 beginning January 10, 1931, and extending to June 10th of that year, and to require the Williamson sisters to make similar payments for the same period of time, and to thereafter require the Williamson sisters only to continue payments of $16.66 per month until the debt was paid. Dean testified that he was told by both Moose and Lena Higgins that this was the consideration for the new mortgage which he prepared. Lena Higgins paid him the $25 attorney fee as agreed, and she also made the six monthly payments. Dean testified that he was the only member of the law firm who was familiar with the transaction and knew the facts. He has retained his membership in this law firm although he removed to St. Louis in 1933, where he has since been employed as attorney for the Federal Land Bank of St. Louis. When he learned that his firm's name had been signed to the complaint filed to foreclose the new mortgage, he notified the officers of the association that he could not accept that employment, as he had already collected and paid over the debt which the mortgage secured, and he would be compelled to file an answer setting up the facts herein recited. The decree from which this appeal comes contains no special finding of fact, but did dismiss the foreclosure proceeding as being without equity.

The recital of the consideration for the mortgage here sought to be foreclosed copied above, is somewhat ambiguous, but it does not appear to express the purpose of releasing Lena Higgins upon payment of $125, and appellant insists that, as the reformation of the mortgage was not prayed, its foreclosure should be ordered, and that testimony should not be heard to contradict or explain it.

It is true the reformation of the mortgage is not prayed, but it is true, also, that its reformation would not be required, if we accepted Dean's construction of it. But it was prayed that upon a final hearing the said lands be declared free of any and all claims of plaintiff, and for any and all other legal and equitable relief to which Lena Higgins was entitled whether specifically prayed for or not. We think this prayer is sufficient to ask reformation, if relief cannot be otherwise given. But it is the statement of facts, and not the prayer for relief which constitutes the cause of action; and the court may grant any relief which the pleaded facts warrant under a prayer for general relief or without any prayer at all; but the courts will not suffer the plaintiff to take a decree that is not responsive to the issues nor justified by a full development of testimony. *Baldwin* v. *Brown,* 166 Ark. 1, 265 S. W. 976. If the court did not in fact interpret the mortgage as Dean testified it was intended to be, the decree in effect accords relief by reformation. Such is the effect of a refusal to decree its foreclosure.

Appellant insists that reformation of a written instrument, even when that relief is properly prayed, will not be granted except upon evidence that is clear, unequivocal and decisive. This is a correct statement of the law, but even so, we think the testimony measures up to that requirement. *Davidson* v. *Peyton,* 190 Ark. 573, 79 S. W. (2d) 734. The testimony does not disclose the value of any one of the three lots sold by Carter to these colored women. But we do know that the lot sold Lena Higgins was unimproved while there was a building on the lots sold to the Williamson women on which as much as $900 insurance was collected when it burned. Moose may have thought the $125 was a fair and proportionate part of the debt for Lena Higgins to pay. Moose is now dead, but the testimony of Dean, who at the time was the association's attorney, is unequivocally to the effect that Lena Higgins' lot should be released from the lien of the Carter mortgage when she had made the payments required of her by her own mortgage. She paid the $25 and assumed the payment and gave additional security for the $100 which she later paid. The court therefore

properly refused to decree the foreclosure of the mortgage against her lots, and it is, therefore, affirmed.