CRUTCHER *v.* BARNES.

4-7435                                    182 S. W. 2d 867

Opinion delivered October 23, 1944.

*J. F. Gautney, William A. Percy* and *Doyne Dodd,* for appellant.

*A. F. Barham,* for appellee.

ROBINS, J. In this suit appellant prayed for cancellation of a lease contract entered into by appellant, as lessor, and appellees, V. R. Smith, E. B. Crutcher and Jack Barnes, as guardian of Harry Francis Barnes, as lessees on February 27, 1939, covering certain real property in Mississippi county, Arkansas. Appellees, denying the allegations of appellant's complaint, alleged that under the real contract entered into by all the parties it was the intention that the term of the lease should be for the lifetime of appellant, and they asked reformation of the lease contract so as to make the term thereof the natural life of appellant. By the decree of the lower court cancellation of the lease contract was denied and reformation thereof as prayed for by appellees was granted; and this appeal is prosecuted to reverse that decree.

The land involved in this suit, known as the Moorehead plantation, containing approximately 1,000 acres,

was owned by Mrs. Lizzie Friend, who died testate in Shelby county, Tennessee, in January, 1936. By her will she devised this land to appellant, her son, for life, the remainder, at appellant's death, to vest in appellant's daughter, Roberta Crutcher Barnes, his son, Edward Crutcher, and his son-in-law, Victor Robinson Smith, share and share alike. Roberta Crutcher Barnes died intestate in March, 1936, and her one-third remainder interest in the land thereupon descended to her only son, appellee, Harry Francis Barnes, a minor, whose father, appellee Jack Barnes, was appointed his guardian by the probate court of Shelby county, Tennessee.

The lease contract sought to be canceled herein was as follows:

"This contract, made and entered into by and between Harry Crutcher, to be hereinafter referred to as first party, and V. R. Smith, E. B. Crutcher and Harry Francis Barnes by Jack Barnes, guardian, to be hereinafter referred to as second parties, witnesseth;

"Whereas, the first party is the owner of a life estate in certain lands in Mississippi county, Arkansas, under the will of Mrs. Lizzie Friend, deceased, and the second parties are each the owners of an undivided one-third interest in said lands, subject to the life estate of the first party, and

"Whereas, the first party desires that said lands be divided between the second parties in order that each of the second parties may farm and operate his part of said lands.

"The first party has agreed, and does hereby agree that he will lease to each of the second parties one-third of said lands, beginning January 1, 1940, for an annual cash rental of $500, due and payable on the 15th day of November of each and every year, and payment of each of the second parties of all taxes and special assessments levied against said lands.

"Each of the second parties have agreed and do hereby agree that they will pay the first party an annual

cash rental of $500 per year on the 15th day of November, 1940, and each year thereafter, and that they will pay all taxes and special assessments, which may be levied against their part of the land, and will keep their part of the land in a good state of repair.

"Should either of the second parties fail to pay any taxes or special assessments levied against their part of the land, or fail to pay the annual cash rent to the first party promptly on November 15th of each year, then the first party may at his option cancel this contract as to the second party, who is in default, by giving him written notice of his intention to cancel this contract.

"Witness our hands on this 27th day of February, 1939.

"/s/ Harry Crutcher,
    Party of the First Part.
"/s/ V. R. Smith,
"/s/ E. B. Crutcher,
"/s/ Jack Barnes, Guardian,
    Parties of the Second Part."

It is undisputed that the lease contract was executed for the purpose, as is shown by its recitals, of enabling the three remaindermen to have the land partitioned in kind amongst themselves, so that each of them might go into possession of and cultivate his portion of the plantation. In pursuance of this plan a friendly partition suit, in which appellant was made a party and entered his appearance, was instituted and commissioners were appointed to partition the land. These commissioners, in making the division, apparently put into effect an agreement as to division of the land made at a family meeting attended by appellant, and appellant testified that he himself made the division. After the commissioners had reported their recommendations and the chancery court by its decree had vested title in each of the remaindermen for his respective portion of the land they each went into possession of the tract allotted to them respectively, and paid the taxes and special

assessments accruing thereon, and each thereafter paid annually to appellant the rent reserved by him.

Appellant alleged in his complaint that he was entitled to a cancellation of the lease contract on the following grounds: (1) That it was the understanding and agreement between him and appellee, Jack Barnes, that Jack Barnes would in person go upon the portion of the land set apart to his son and would actually cultivate same, and that said appellee had failed to do this and had rented same to another person, who was cultivating same. (2) That appellees had permitted the improvements on the land to go down and failed to make proper repairs thereon. (3) That appellee, Jack Barnes, as guardian, was not authorized by proper order of court to enter into the contract on behalf of his son, Harry Francis Barnes, a minor, and that the contract was void for that reason.

Assuming, but not deciding, that a verbal agreement between appellant and appellee, Jack Barnes, as to the latter actually cultivating the land to be allotted to his son, would be enforceable and that a violation of such agreement would entitle appellant to a cancellation of the contract, appellant, under the proof in this case, is in no position to ask for such relief on this ground, because it was shown by his own testimony that, after some dispute had arisen, appellant agreed that his son-in-law need not personally cultivate the land, and his son-in-law rented the land to Wheeler on appellant's instructions and advice. Appellant testified: ''Q. Do you know of a single or fraudulent thing that Jack Barnes did in connection with that contract, anything he did to mislead you in signing this contract? A. This was my firm opinion that Jack is going to live on my place. . . . I finally agreed to let Jack live off the place and I told him to rent it to Wheeler. Q. You advised him to do that? A. Yes, sir.'' Since, according to his own admission, appellant consented to and advised the sub-renting of the land by appellee, Jack Barnes, to Wheeler, appellant is, in any view of the matter, estopped

to ask that the contract be rescinded for failure of Jack Barnes to live on the land.

While, according to the testimony, some of the rent houses on the plantation were not being kept in the best of repair, appellant did not show such a failure on the part of appellees in their undertakings to keep up these repairs as would amount to a breach of the contract. The effect of the testimony of several witnesses was that, taken as a whole, the premises were in practically as good shape at the time of trial as they were when the lease was executed. Appellant did not show such neglect of repairs on the part of lessees as would entitle him to declare a forfeiture of the lease.

It is well settled that the right of a minor to avoid a contract entered into by him is personal to the minor, and that an adult party to the contract cannot take advantage of the incapacity of the minor to contract. "As a general rule, no one but the infant himself, or his legal representatives . . . can avoid the voidable acts, deeds and contracts of an infant. . . ." *Bozeman* v. *Browning,* 31 Ark. 364. "The contract of an infant is not absolutely void, but is only voidable at the instance of the infant himself." (Headnote 5) *Davie* v. *Padgett,* 117 Ark. 544, 176 S. W. 333. "The right to avoid a contract because of the infancy of the maker or of one of the makers is a privilege personal to the infant. . . ." 27 Am. Jur., p. 772.

The lease here involved has turned out to be very profitable to the infant lessee. He has lived up to his undertakings thereunder, and appellant has no right to rescind the contract on the ground of the minority of appellee, Harry Francis Barnes, or because the probate court had not authorized execution of the contract.

The evidence that it was the intention of all parties to the lease contract that by it appellant was leasing the land for and during his natural life is clear and convincing. In fact, the terms of the contract itself show that it was not a contract for one year or from year to year, as appellant now insists. Disinterested witnesses

testified that appellant stated to them that he had leased the land to appellees for the remainder of his life, and there was evidence indicating that appellees, in consideration of appellant's promise to lease the land for his lifetime, had permitted appellant to sell and appropriate to his own use the proceeds of a considerable amount of personal property which, under his mother's will, belonged to appellees, subject to appellant's right to use it during his lifetime.

The lower court properly found that under the real contract between the parties the term of the lease was co-extensive with the remainder of appellant's natural life, and therefore it was proper to decree a reformation of the lease so as to make it reflect the intention of the parties at the time it was executed. *Stephenson* v. *Garner,* 84 Ark. 623, 104 S. W. 533; *Martin* v. *Hempstead County Levee District No. 1,* 98 Ark. 23, 135 S. W. 453; *Hoyer* v. *Edwards,* 182 Ark. 624, 32 S. W. 2d 812; *Huffstuttler* v. *State,* 183 Ark. 993, 39 S. W. 2d 721; *Davidson* v. *Peyton,* 190 Ark. 573, 79 S. W. 2d 734; *C. M. Farmer Stave & Heading Company* v. *Motor Wheel Corporation,* 192 Ark. 1177, 90 S. W. 2d 974; *Wood* v. *Wood, ante,* p. 518, 181 S. W. 2d 481.

The decree of the lower court is affirmed.