CAMPBELL *v.* FENDER.

4-9353                                          235 S. W. 2d 957

Opinion delivered January 29, 1951.

*J. Fred Parish,* for appellant.

*Pickens, Pickens & Ponder,* for appellee.

GRIFFIN SMITH, Chief Justice. On June 25, 1949, J. C. Campbell purchased a used automobile from appellee, who did business at Newport as Fender Motor Company. Campbell first bought an old Dodge car, paying appellee for it, then on June 25th he traded it to appellee for a 1940 Ford. He was allowed $50 for the Dodge—the amount he had paid. The agreed price of the Ford was $595 and Campbell executed a title-retaining note for the difference of $545. Before consummating the deal Fender told Campbell the note would have to be signed by the purchaser's father or mother. The mother signed as a co-maker and testified that she did so to enable J. C. to have the car.

Young Campbell testified that he paid $160.50, then returned the car in mid-August and disaffirmed the contract. Fender testified that $195 had been paid, but credits on the note from which he read total $145.50.[1]

In attempting to return the car Campbell drove it to a lot adjoining appellee's property and left it, after explaining, in effect, that the contract was being disaffirmed.

The trial court, sitting as judge and jury, found that Campbell's offer to return the property had not been accepted and gave judgment against each of the defendants for $386.74, with interest from August 25, 1949. The credit differences testified to are not accounted for, but appellant does not complain of the amount as such. Appellant's objections are (a) that the mother was an ac-

---

[1] On cross-examination, in response to the question, "How much credit is [Campbell] entitled to on the note?" Fender replied, "it would be $108, plus $87.50—in other words, $195." But he had previously testified (when asked to identify payments indorsed on the note) that $145.50 had been paid in five installments. It would seem, therefore, that the total of $195 was a credit against the purchase price of $595 and included the Dodge transaction. This is emphasized by the statement that $50 was paid June 25th when the note was executed, and it "ties in" with the Dodge deal.

commodation indorser, and since there was no lawful obligation in respect of the minor, she should not be held; and (b) when the car was returned the debt was discharged. Appellee thinks Campbell ratified the contract by selling the subject-matter. There was testimony that Campbell sold the car to his brother, Lew, but this is not seriously argued. In any event the contention would fail, in view of Lew's apparent acquiescence in the return.

We said in *Crutcher* v. *Barnes,* 207 Ark. 768, 182 S. W. 2d 867, that the right of a minor to rescind a voidable contract was personal and that an adult party to the contract cannot take advantage of the minor's status. In the case at bar Campbell's right to rescind could not be defeated by appellee's refusal to accept the car, hence the trial court was in error in rendering judgment against J. C. Campbell and in not giving judgment for the money paid. But the mother's situation is different. Young Campbell testified that he did not tell Fender how old he was, and Fender says he did not know. The requirement for an additional signature to the note was in keeping with practices of the bank where the paper was negotiated. When Campbell quit paying, Fender reacquired the note he had indorsed to the bank—a transaction that could not prejudice either of the appellants or change the nature of the contract.

Our conclusion is that while the judgment as to J. C. Campbell must be reversed with directions that the amount he paid be refunded, Mrs. Campbell is liable to the full extent of the note, for which judgment should be given. This would include any sum the minor receives from the required refund by Fender. When the judgment is paid the mother is entitled to the car or its value as of the time of the son's disaffirmance.

Reversed; cause remanded.