GREEN v. OZARK LAND COMPANY.

4-6748                                            163 S. W. 2d 325

Opinion delivered June 29, 1942.

*J. Dale Wallace,* for appellant.

HUMPHREYS, J. This suit was brought on the 13th day of August, 1941, by the members of a partnership doing a real estate business under the trade name of "Ozark Land Company," against appellant, in the circuit court of Washington county, to recover a 5 per cent. commission on the sale price of a 24-acre tract of land situated near Springdale, Arkansas, growing out of a written contract of date May 21, 1940, listing said land by appellant with appellees for exclusive sale within three months for $4,500.

It was alleged in the complaint, after setting out the contract, that appellees were the procuring cause of the sale of said land made to Wallace Johnson in the early part of February, 1941, by appellant at a reduced price of $3,800, and appellees prayed for a judgment of $190 as commission upon said sale.

Appellant filed an answer admitting that she signed the contract on the 21st day of May, 1940, giving appellees the exclusive right to sell said land within three months for $4,500 and that, in the event said appellees procured a buyer within said time for $4,500, she agreed to pay them 5 per cent. commission, but that they changed the contract in material respects without her consent, and that after the expiration of the three months she notified the appellees that the place was off the market as they had not produced a buyer within three months of the date of the contract who was ready, willing and able to purchase said land, and that after waiting a reasonable time she, without the assistance of appellees, sold the land in the early part of February, 1941.

She prayed for a dismissal of the complaint.

The cause proceeded to a trial and at the conclusion of the evidence appellant and appellees respectively

moved the court for instructed verdicts and neither asked for any other instructions, whereupon the court, without objections from either party, withdrew the cause from the jury and proceeded to determine the questions involved, and from a consideration of the evidence and the applicable law, the court found that appellant was indebted to appellees in the sum of $190 with interest at the rate of 6 per cent. per annum from the date of the judgment, from which an appeal has been duly prosecuted to this court.

Under these circumstances the verdict of the court is as binding as a verdict of a jury and if there is any substantial evidence to support the verdict, it and the consequent judgment must be affirmed.

Viewing the evidence in the most favorable light to appellees it is about as follows:

At the inception of the dealings between appellant and appellees, J. P. Dean, son-in-law of appellant, and his wife, daughter of appellant, were residing upon the 24-acre tract of land. Appellant, who is a non-resident of this state and who resided in Oklahoma, was a frequent visitor at the home of her son-in-law and daughter and was visiting them when the alleged contract was executed by appellant. Her son-in-law, J. P. Dean, during her visit contacted appellees for her and had them prepare an exclusive contract for the sale of said land on May 21, 1940, authorizing them to sell the land for $4,500 within three months, and that, in the event they did so to pay them the customary commission of 5 per cent. on the gross amount of the sale. The prepared contract contained the following provision:

"I further agree to pay said commission to Ozark Land Company if said property be sold or otherwise disposed of, by any other person, firm or corporation, including the undersigned, during the above period, or after the above period, on information given, received or obtained through this agency."

This prepared contract was delivered to J. P. Dean and he took it home for his mother-in-law to sign and after procuring her signature thereto he delivered it to appellees.

Appellees then advertised the land in three or four newspapers, giving a detailed description thereof, one of the papers was the Fayetteville Daily. A man by the name of Wallace Johnson saw the advertisement in the Fayetteville Daily and went to appellees' office in Springdale and asked that they show him the land. L. S. Phillips, J. W. Phillips and Bob Gosnell were the members of the partnership. The prospective purchaser said that he would like to see the 24-acre tract of land and Bob Gosnell took him out, showed him the land and introduced him to J. P. Dean and his wife. He said he wanted his wife to see the land also and so he came back at a later date to the office, and Bob Gosnell took him and his wife out to inspect the property. He became interested to the extent that he listed his property with appellees for sale and told them if they could sell his place for $5,500 he would buy appellant's land at the price specified in the contract. Wallace Johnson was not able to buy appellant's land unless he sold his own. Appellant was visiting at the home of her son-in-law and daughter at the time Bob Gosnell introduced Wallace Johnson and his wife to J. P. Dean and his wife, but she was not present at that particular time. Thus the matter stood until J. P. Dean came to the office of appellees and directed them to reduce the price in the contract from $4,500 to $4,250 and then came back later and told them to change the price in the contract to $4,000 and also to insert in the contract the limitation of five months instead of three months, all of which they did.

L. S. Phillips, a member of the partnership, testified that his firm had all their dealings with J. P. Dean and his wife; that after the lapse of the ninety-day period of the contract J. P. Dean told him to make no further effort to sell the land, but on December 8, J. P. Dean came in and told them to go ahead and sell same, but that before doing so, to write appellant, Mrs. Green; that pursuant to this request they wrote to appellant, Mrs. Green, asking and advising her to give them the exclusive sale thereof, but that if she did not want to do that they would handle it any way she wanted them to handle it. It seems that she did not answer this letter by mail, but the witness

produced the following note from her which was left on their desk and which she admitted having written:

"Mr. Phillips, I called to see you, but found nobody home. That price of 4,000 that J. P. gave you was only until January 1st, and now it has gone back to 4,250, but if you get a buyer don't let him get away. After Sunday there will be someone living in the house. I am still at J. P.'s Lincoln, Route 2.

"Sincerely,
"Mrs. Sarah Green."

The witness admitted that during the ninety-day period specified in the contract for the exclusive sale of the property his firm did not present to appellant and did not present to J. P. Dean a purchaser who was ready, able and willing to purchase the land at either of the prices mentioned in the contract, but that the only purchaser they had for it was Wallace Johnson who had agreed to buy it in case he, Johnson, could sell his own place.

Nothing further occurred until Wallace Johnson negotiated a sale of his own property in the early part of February, 1941. Wallace Johnson then called at the home of J. P. Dean and he was absent. A day or so after he called, J. P. Dean contacted Wallace Johnson and Wallace Johnson offered him $3,800 for the property. J. P. Dean immediately called up the Greens in Oklahoma and told them of the offer without stating who had made it. Appellant's husband, Dr. Green, was doing the talking over the telephone with J. P. Dean, but appellant herself was standing by her husband and Dr. Green told J. P. Dean not to let the purchaser get away, but to close the deal with him. Mrs. Dean then wrote her mother about the matter and the deed was forwarded to Mrs. Green to execute to Wallace Johnson. She executed and returned the deed to the Deans and upon the delivery of the deed to him Wallace Johnson paid Mrs. Dean $3,800.

Wallace Johnson testified that he bought the land through J. P. Dean after Dean told him that he had taken the sale of the land out of the hands of appellees and that

it had not been listed for sale with any other agency; that he would not have known anything about the land being for sale had it not been for the advertisement inserted in the Fayetteville Daily by appellees; that appellees interested him in the purchase of the land by taking him and his wife out to see the land; that appellees introduced him to J. P. Dean and his wife; that he offered J. P. Dean $3,800 for the land without making any further inspection of same; that J. P. Dean told him he would not close the deal at that price until he telephoned parties in Oklahoma; that either that day or the day after he told him that Mrs. Green was willing to take $3,800 for the property and that he bought it from appellant through the Deans for that sum and early in February, 1941, received a deed to the land and paid the consideration to Mrs. Dean.

We think a fair interpretation of the entire testimony is that appellant authorized the Deans to negotiate a sale of the 24-acre tract of land through appellees as her agents and that J. P. Dean had authority to make such changes as were made in the contract from time to time. He certainly had authority to reduce the price in the contract to $4,000 because appellant herself stated in the note she left on the desk of appellees that the price of $4,000 that J. P. Dean gave them was only until January 1, 1941, and that now she wanted $4,250 for it, but if they got a buyer not to let him get away. In this note there was a recognition of the fact that the land was listed with them at $4,000 up to January 1, 1941, and after that they must sell it for $4,250. This necessarily meant after January 1, they must price it at $4,250, but not to let a buyer get away. Appellant knew that appellees had advertised her land for sale and had interested Wallace Johnson in it by showing Wallace Johnson and his wife the place and by introducing him to her son-in-law and daughter. She was visiting them at the time the place was shown to Wallace Johnson. In a little over a month after January 1, she reduced the price through the Deans to $3,800 and sold this property to the prospective purchaser who had been interested in the place by appellees and with whom they had a conditional offer for the place if said pur-

chaser could sell his own place. We have concluded that under all the circumstances and facts in the record appellees were the procuring cause of this sale. The party to whom she sold the land was the same party who had been interested in the land by appellees and the same party to whom appellees had shown the property and the same party to whom appellees had introduced the Deans.

There is, therefore, substantial evidence in the record to support the verdict of the court on the theory that after the property had been listed with appellees the ultimate sale thereof was brought about or procured by one of the advertisements appellees published in the newspaper and by showing the property to Wallace Johnson and introducing him to the Deans. In the language of Wallace Johnson, he would have never bought the property or even known anything about it unless he had seen their advertisement and been interested in same by their exertions. This court said in the case of *Scott* v. *Patterson & Parker,* 53 Ark. 49, 13 S. W. 419, that: "As there is conflict in the testimony as to material facts, we cannot disturb the findings of facts by the court sitting as a jury. We cannot say they are without evidence to support them."

In the *Scott* v. *Patterson & Parker* case, *supra,* this court declared the law applicable to this class of cases by quoting as follows from the case of *Tyler* v. *Parr,* 52 Mo. 249: "The law is well settled that in a suit by a real estate agent for the amount of his commissions it is immaterial that the owner sold the property and concluded the bargain. If after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions. Or if the agent introduces the purchaser or discloses his name to the owner, and through such introduction or disclosure, negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner."

No error appearing, the judgment is affirmed.