STATE OF MISSOURI at the Relation of HENRY ALLAI, Relator, v. DEWEY P. THATCH, Judge of the Circuit Court of St. Clair County, Missouri, Respondent, No. 41957—234 S. W. (2d) 1.

Court en Banc, November 13, 1950.

*Harry C. Clark* and *James R. Hunsucker* for appellant.

*Edwin Mills,* Prosecuting Attorney, St. Clair County, for respondent.

[3] ELLISON, J.—This is an original proceeding in prohibition brought by the relator Henry Allai, individually and as president of District 14, United Mine Workers of America. It challenges the jurisdictional power of the respondent judge of the circuit court of St. Clair county to grant a temporary restraining order in an injunction suit brought in his court by the prosecuting attorney on a verified petition. The latter suit seeks to enjoin the relator Allai, his said union and subordinate branches and members thereof, from obstructing with men and automobiles in aid of a strike, a public road furnishing the only means of entrance to the coal mining works of the Pioneer Mining Corporation in said county, and prays other injunctive relief as hereinafter stated.

The petition in the injunction suit alleges that said mining works were constructed, completed and ready for business in February, 1950, and that many local residents of the county were ready, able and desirous of obtaining needed employment therein as non-union men. But it charges that relator Allai and his union associates have blockaded said public road leading to the mining works by parking automobiles in staggered formation on both sides of the road leaving in between only a narrow zigzag passageway for public travel—which passageway the defendant union members obstruct by congregating therein in large numbers and challenging and intimidating travelers therealong so as to prevent non-union workers from entering and laboring in the coal mining plant.

The injunction petition further alleges the foregoing acts of relator Allai and his associates cause "great annoyance, inconvenience, danger and detriment" to the public; that the "public welfare, health, safety and common good of the people of [4] said vicinity require that *said nuisances* (italics ours) hereinabove complained of be enjoined and abated;" that the suspension of public traffic and the prevention of coal mining in the winter time will endanger the public health, comfort and common good of the people affected, enforce idleness, tend to extort from the mining corporation an illegal contract with the relator Allai and his union associates, and will foster a multiplicity of civil and criminal actions, for the abatement of which there is no adequate remedy at law.

In response to the prosecuting attorney's said verified petition for the injunction, and without the introduction of evidence, the respondent circuit judge issued a temporary restraining order [also called a temporary injunction] enjoining the relator Allai and his said associates:

"(a) *from in any way whatsoever and at any and all times hindering, delaying and obstructing, either by the grouping and assemblage of persons and the improper parking and congesting of motor vehicles, any and all persons lawfully traveling said (described) public road* [italics and parenthesis ours];

"(b) from coercing, threatening, intimidating and annoying in any manner and to any extent whatever and at any place any person or persons doing business or desiring or attempting to do lawful business with said Pioneer Mining Corporation;

"(c) from walking, standing, assembling, congregating and grouping together at, near, around the coal mining plant, mine, machinery and property of said Pioneer Mining Corporation;

"(d) from obstructing, hindering, delaying by parking motor vehicles or otherwise, persons, either visitors, employees or prospective employees of said Pioneer Mining Corporation, entering the property and premises of said Pioneer Mining Corporation or working thereon or therein;

"(e) from doing any unlawful act to prevent said Pioneer Mining Corporation from making any and all lawful contracts and from conducting its coal mining business in a lawful manner;

"(f) from so conducting themselves or any of them as to enforce idleness and unemployment upon any person or persons working or desiring to work at said coal mining plant by creating through the assembled group or groups of men at or near said mining plant and property, a sense of fear and frustration."

Thereafter the defendant-relator Allai, appearing specially, filed in respondent's court a verified motion to dismiss said temporary injunction, and upon the overruling of that motion filed his petition here for a writ of prohibition. The prohibition petition incorporates by reference the respondent's aforesaid injunction order. This court thereupon issued its provisional rule in prohibition requiring the respondent judge to show cause why we should not issue a rule absolute forbidding the enforcement of the foregoing paragraphs (b) to (f), inclusive, of said temporary injunction, but expressly excluding paragraph (a).

The return of the respondent judge to said provisional rule in prohibition is directed to said paragraphs (b) to (f) thereof, but assumes the legality of said paragraph (a), since the latter was not challenged in the provisional rule. The return alleges said paragraphs (b) to (f) were incidental to and necessary and proper to make effective the relief granted in said unchallenged paragraph (a). In particular the return asserts said paragraphs (b) to (f) were necessary to prevent relator Allai and his associates from interfering with the lawful employment of men at the coal mine by the use of force, menace and threats, in violation of Sec. 4635, R. S. 1939, Mo. R. S. A., and holds the violation of that statute would, in the circumstances, constitute a public nuisance.

The respondent judge's return further alleges the restrictions imposed by said paragraphs (b) to (f), inclusive, of the temporary

injunction were necessary and proper to prevent the relator Allai and his associates from wilfully hindering, obstructing and .delaying members of the general public in lawfully traveling along the aforesaid public highway in violation of Sec. 8586, R. S. 1939, Mo. R. S. A., which [5] latter it is asserted would constitute a public nuisance.

Still further the respondent judge's return alleges the temporary injunctive relief granted was proper to prevent the relator Allai and his associates: (1) from coercing the mining corporation into discriminating against its employees and prospective employees who were members of the general public, but not of relator's union; (2) from encouraging or discouraging membership of the corporation's employees in a labor union; (3) and in causing said employees to contract with a labor organization which is not the representative of a majority of their members. The return rules all these acts are forbidden by the National Labor Relations Act, 29 U. S. C. A., Sec's 158, 159; and that they would deprive the individual employees or prospective employees of the mining corporation, of the right to organize and bargain collectively through representatives of their own choosing, as guaranteed by Art. I, Sec. 29, Const. Mo., 1945, and the right to life, liberty and the pursuit of happiness under Art. I, Sec. 2, Const. Mo., 1945. And it affirms a denial of these rights would constitute a public nuisance.

And finally the return alleges that while the rights of free speech, lawful assemblage and peaceful picketing are constitutional rights, yet where the same are coercive and for an unlawful purpose, they constitute a public nuisance and can be restrained by injunction, citing Fred Wolferman, Inc. v. Root, 356 Mo. 976, 981, 204 SW. (2d) 733, 735, 174 A. L. R. 585, 591; 333 U. S. 837, 92 L. Ed. 1122, 68 S. Ct. 608.

We take up first the several assignments made by the relator Allai in his *brief* here in the prohibition proceeding, in which brief he designates himself as ''appellant.'' And in connection with these assignment groups we consider the answering assignments made by the respondent judge in his brief. But before going into those issues it should be stated that relator's brief appears to challenge in some respects the legality of the aforesaid paragraph (a) of respondent's temporary injunction, although our provisional rule in prohibition was not directed thereagainst.

The first point in relator Allai's brief is that injunction will not lie to restrain the perpetration of a public nuisance unless it detrimentally affects the health or morals of the *public as such;* and that such relief will not be granted merely to protect private property or the commission of a crime. And relator asserts the relief sought here is not for the protection of the public, but only the private property of the Pioneer Mining Corporation. On this point relator cites the

authorities listed below.[1] We cannot, of course, discuss all of them at any length, but in our opinion they do not help relator.

The cited Section 38 of Walsh on Equity does announce the general rule that public nuisances will not be enjoined to protect mere private property rights, but only when they affect the "health, safety and physical comfort of the public." However, that particular Section 38 deals with "purprestures," which, for our purposes, may be defined as a private obstruction of, or encroachment upon, a substantial part of a public road amounting to an appropriation thereof to the public prejudice. "Purprestures," 35 Words & Phrases (Perm. Ed.) p. 553. And the Walsh text, supra, concedes that where such public prejudice results injunction will lie. In this case we think the systematic, continuous and complete obstruction of the public road by automobiles and recruited strikers would be the same in principle and effect as if a structural obstacle were placed thereon. See also 46 C. J., § 252, [6] p. 719, § 367, p. 761; 66 C. J. S., § 66, p. 815; 25 Am. Jur. § 273, p. 566.

And furthermore, Sec. 48, p. 242 of the same Walsh text holds with respect to labor disputes that where strikers by threats, intimidation or violence induce or compel employees to quit their work, injunction will lie against a continuance of that interference. And the same rule is said to apply where such interference prevents the employer from hiring other workmen. On the whole, therefore, we conclude the Walsh text should be considered as authority against relator.

Referring briefly to the foregoing State decisions cited supra[1] by relator, the *Uhrig* case conceded injunction will lie to restrain purprestures. The *Canty* case ruled the staging of the public bull fights could be enjoined as a public nuisance though the same act constituted a crime. The *City of Tarkio* case held the city could successfully maintain a prosecution for violation of a city ordinance forbidding the operation of a breeding barn located therein when it would scandalize citizens of the surrounding neighborhood. And the companion *McNulty* case held such neighbors could maintain an injunction suit to restrain the operation of such barns as a nuisance, but withheld discussion as to whether it was a public or private nuisance. The *Hodson* case ruled a private suitor cannot maintain an injunction to restrain the operation of a bawdy house upon leased premises of which he was the owner and lessor, but there is ample authority that such

[1]Walsh on Equity (1930) § 38, p. 200-1; State ex rel. Cir. Atty. v. Uhrig, 14 Mo. App. 413, 414; State ex rel. Atty. Gen. v. Canty, 207 Mo. 439, 448 (3, 4), 454-9 (7), 105 SW. 1078, 1080 (2). 1082-4 (7), 15 L. R. A. (N. S.) 747, 123 A. S. R. 393, 13 Ann. Cas. 787; City of Tarkio v. Miller, 167 Mo. App. 122, 151 SW. 208; McNulty v. Miller, 167 Mo. App. 134, 151 SW. 208; Hodson v. Walker, 170 Mo. App. 632, 637, 157 SW. 104; State ex rel. Tibbels v. Iden (Mo. App.) 221 SW. 781 (3); Commission Row Club v. Lambert, 161 SW. (2d) 732, 735 (8); City of St. Louis v. Art Publication Society. 203 SW. (2d) 902 (1).

places may be enjoined as public nuisances where the evidence justifies it, although the act also constitutes a crime,[2] as held in the Canty case.

The *Tibbels* case, decided in 1920, held a prosecuting attorney could not enjoin as a public nuisance a dam built across the outlet of a non-navigable lake or slew, on the theory that it would cause adjacent lands to be flooded. But that suit was founded on Sec. 7422, R. S. 1919, now Sec. 10309, R. S. 1939, Mo. R. S. A., appearing in the Chapter on Mills and Electric Power. The statute broadly provides that ''All dams, stoppages and obstructions not made according to law shall be deemed to be *public nuisances,* and may be dealt with as such.'' But the next preceding Sec. 7421, now Sec. 10308, provides the circuit court shall have power to prevent the erection of any dam or obstruction in any stream which operates as a nuisance *and injures any mill, machinery, power or light works or municipal water source* the erection of which had been theretofore duly authorized. The Court of Appeals held these specific provisions of Sec. 7421 restricted the broader provisions of Sec. 7422, in consequence of which the latter section would not support the prosecuting attorney's theory that the dam involved was a public nuisance in that it would make impounded water to *overflow adjacent agricultural land*—this latter not being a contingency specified in Sec. 7421. We think the Tibbels case is not authority for relator's contention here. It turns on the construction of the particular statutes involved. The last two cases cited above,[1] need not be discussed.

Relator's next point is that the temporary injunction issued by respondent is void because it seeks primarily to protect the private property of the mining corporation. On that point he cites the Tibbels case, supra. We do not agree. The prosecuting attorney's petition for injunction alleged to the contrary that the relator Allai and his associates were completely obstructing the highway to public travel, to the ''great annoyance, inconvenience, danger and detriment of the public;'' that the ''public welfare, health, safety and common good'' of the people of the vicinity required the ''said nuisances'' be abated; that the suspension of public [7] traffic would prevent operation of the coal mine, a local industry, in the wintertime and deprive the public of employment and fuel; and would engender a multitude of civil and criminal actions, and deprive the public of an adequate remedy at law. Proof of these facts would be ample to establish a public nuisance.

---

[2]46 C. J. § 152, p. 700, § 370, p. 762; 66 C. J. S. § 45(b), p. 796, § 9(b), p. 748; 39 Am. Jur., § 147, p. 410; Ex parte Laymaster, 260 Mo. 613, 168 SW. 754, Ann. Cas. 1916 C, 452; State ex rel. Orr v. Kearns, 304 Mo. 685, 264 SW. 775; State ex rel. Renfrow v. Service Cushion Tube Co., 316 Mo. 640, 644(1), 291 SW. 106, 108(1); State ex rel. Igoe v. Joynt, 341 Mo. 788, 795(4), 110 SW. (2d) 737, 740 (11, 12).

Relator Allai's brief also asserts that as a general rule equity has no jurisdiction to enforce the criminal law. That is true. And it is also true that the respondent judge's return alleges the obstruction of the public road by Allai and his associates constituted a misdemeanor under Sec. 8586, R. S. 1939, Mo. R. S. A.; and that their interference by force, menace and threats with the employment of the local public at the coal mines would constitute a misdemeanor under Sec. 4635, R. S. 1939, Mo. R. S. A. But while the fact that these acts violated the criminal laws would not alone justify the enforcement of those laws by injunction, yet under the authorities cited supra,[2] the acts can be restrained by injunction if they are prejudicial to the public health and welfare, and thereby constituted public nuisances.

The next point in relator Allai's brief is that labor unions are voluntary associations, and not corporations or legal entities capable of suing or being sued at law, in consequence of which the respondent judge's temporary injunction against the labor unions here involved is void. On that point relator cites National Pigments Co. v. Wright et al., 118 SW. (2d) 20, 24 (9, 10) and two earlier cases, all decided by the St. Louis Court of Appeals. However these rulings were based on Clark v. Grand Lodge, 328 Mo. 1084, 1090-1 (6, 7), 43 SW. (2d) 404-6 (1-6), 88 A. L. R. 150, a decision of this court en banc, and Ruggles v. International Ass'n Iron Workers, 331 Mo. 20, 27 (4), 52 SW. (2d) 860, 862 (5). And both of those decisions conceded such voluntary associations may be sued at law where such authority has been conferred by statute. But the Clark case held the immunity to suit of such an association cannot be raised by mere demurrer or motion to quash the summons, and that the *facts* exempting it from suit must be *pleaded by answer*.

That was not done in this case. The relator Allai, appearing specially, first filed a motion to dismiss the trial judge's temporary injunction, alleging: (1) failure of the prosecuting attorney's petition to state facts entitling him to injunctive relief; (2) the trial court's lack of jurisdiction over the subject matter because the field of labor-management relations is preempted by the Taft-Hartley Act of 1947; (3) failure of the injunction petition to plead lack of sufficient police protection; (4) that the suit was brought by the wrong party; (5) and that no notice of the application for the temporary injunction was given to any of the defendants. All this was followed in the motion to dismiss by a *general denial* of all the allegations in the injunction petition. None of these assignments in the motion raised the point that the labor unions were immune from suit because they are voluntary associations—although the injunction petition had alleged such to be their status.

The trial court overruled the motion to dismiss and relator Allai in behalf of himself and his associates then filed here his petition for

prohibition, which challenges for the first time the trial court's jurisdiction on the constitutional grounds that the temporary injunction illegally restrains their rights of free speech, free assembly, freedom of association, the right to strike and freedom of organizing under the decisions of this court and the Missouri statutes and State and Federal Constitutions. But here again the prohibition petition makes no contention that the defendant unions are voluntary associations, and therefore immune from suit. That point is raised for the first time in relator's brief here.

Under the pleadings and record we think relator Allai is too late in thus making the belated contention here that the National, District and Local Unions were improperly joined as defendants in the [8] injunction suit below because they are voluntary associations. But in view of the importance of the question we view it in two other aspects. First, assuming tentatively that the unions, as such, are not properly in the case, nevertheless seven of their officers are impleaded in the injunction petition as personal defendants along with 33 members of the local union. This fact would make the injunction proceeding binding on these personal defendants, if service of process can be or has been obtained upon them, as was held in the National Pigments case, supra, which relator Allai has cited.

And secondly, the prosecuting attorney's brief in support of the respondent judge's temporary injunction maintains that the injunction suit is a class suit authorized by Sec. 19(a)(3) of the Civil Code of 1943, and Rule 3.07 of this court; and is binding on the defendant National, District and Local Unions, and all their members, so far as affected thereby, whether the latter have been or can be served with process or not. Subsection (a)(3) of that Code section provides:

"(a) If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, one or more, as will fairly insure adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is:

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought. Nothing in this section shall be construed to affect the rights or liabilities of labor unions to sue or be sued."

But Rule 3.07(d) of this Court provides: "No class suit shall be maintained under Section 19(a)(3) unless the judgment or decree will be binding upon all members of the class."

These sections of the Code and our Rule 3.07 are discussed in 1 Carr, Missouri Code Procedure, pp. 160-172. It is there shown that suits under subsection (a)(3) of Sec. 19, supra, are classified as "spurious" class actions; and that the interest of the members of the class need not be based on a common *property* right but only on a common

interest in a *question of law or fact* affecting the rights of the class and the common relief that may be awarded (which is the issue here). And furthermore subsection (a) provides that if the class be numerous and it is impracticable to bring in all the members, only one or more need be sued on behalf of all, if that will fairly afford adequate representation of all. In this case relator Henry Allai, President of the District Union, entered his appearance in this injunction suit on filing his motion to dismiss the temporary restraining order therein. Whether or not any of the other numerous named defendants had been served with process prior to Allai's filing of the instant prohibition proceeding the record does not show.

It seems to us a decision in the underlying injunction suit would be binding on all the named defendants and all members of the named Unions similarly situated and interested. It is true that our Rule 3.07(d) provides no class suit shall be maintained under Code Sec. 19(a) "unless the judgment or decree will be binding upon *all members* of the class" (italics ours). And it is also true that the second sentence of that Code subsection provides, "Nothing in this section shall be construed to *affect* the rights or liabilities of labor unions to sue or be sued." (Italics ours) But the word "affect" often means, as we think it does here, to produce an effect or *change* upon. "Affect", 2 Words & Phrases (Perm. Ed.) p. 635; Nat'l Labor Relations Board v. Suburban Lumber Co., 121 Fed. (2d) 829, 832(2). Certiorari denied 314 U. S. 693, 86 L. Ed. 555, 62 S. Ct. 634.

In other words, the section did not alter the rights of unions to sue or of others to sue them and their members, as those rights stood before the statute was enacted. And there are several Missouri decisions rendered both before and after the enactment of the foregoing Code provision in 1943, holding such rights may be determined [9] in equity even in the absence of a statute so permitting, under the doctrine of virtual representation.[3]

In particular it was held in Robinson v. Nick et al., 235 Mo. App. 461, 479-80 (2, 3), 136 SW. (2d) 374, 385 (2-5), decided in 1940, that the doctrine of virtual representation applied to labor unions. In that case 66 members of a Missouri local union were prosecuting a class suit for an accounting, ouster and receivership against two officers of the non-resident parent union, who had by order of the president thereof been placed in charge of the affairs of the local union. And 81 members of the local union had intervened against the contentions of their fellow members who were plaintiffs. The decision held the suit brought in not only the two officers of the parent

---

[3]Brown v. Bibb, 356 Mo. 148, 156(4), 201 SW. (2d) 370, 374(4); State ex rel. McMonigle v. Spears, 358 Mo. 23, 26(3), 213 SW. (2d) 210, 212(3); Powell v. City of Joplin, 335 Mo. 562, 565-7(1, 2), 73 SW. (2d) 408, 410(1); Kaufmann v. Annuity Realty Co., 301 Mo. 638, 661(2), 256 SW. 792, 797(2).

union who were sued, but also the other non-resident officers and members thereof within the legal (as distinguished from territorial) jurisdiction of the court for the purposes of the suit. And it further ruled the test of representation turned on the *relationship* of those sued to the parent body. That conclusion brings the instant injunction suit within the requirements of our court Rule 3.07.

But relator Allai contends the right of the parties here must be determined under the Labor-Management Relations Act of Congress enacted in 1947 (the Taft-Hartley Act) and in force at the time here involved,[4] and that the State trial court here has no jurisdiction over the subject matter. The first of these cited sections gives employees the right of self-organization, collective bargaining and other mutual aid and protection, and also the right to refrain from such union activities. The second section denounces as an unfair labor practice any interference by the employer with, or restraint or coercion of, or discrimination between, employees, in the exercise of those rights. But that same section also imposes similar restraints upon labor organizations in favor of the employer in the exercise of his or its rights under the Act. These restraints prohibit external fomentation of a strike, and force in requiring the employer or non-union employees to join a union. However, they do not exclude peaceable persuasion, oral or written, by the members of a labor organization, absent threats, force or promise of benefit. And the third section (10-160, supra) vests in the National Labor Relations Board exclusive primary jurisdiction to prevent unfair labor practices, with power in some instances to delegate its authority.

But the foregoing Federal statutes do not preëmpt the jurisdiction of the State courts in all instances.[5] It has been held by this and other State courts and the United States Supreme Court that while peaceful picketing is generally permissible under the Fourteenth Amendment, Const. U. S. for a lawful and proper purpose, yet such picketing may be enjoined when the purpose is unlawful; and though the purpose be lawful the picketing may likewise be enjoined if not peaceable and attended by violence and intimidation under the guise of free speech.[6]

---

[4] 61 Stat. Pt. I., pp. 140-1, §§ 7, 8(a) (b), 10, 29, U. S. C. A. (Pocket Part), pp. 24-25, 50, §§ 157, 158, 160.

[5] Allen-Bradley Local, U. E. R. & M. W. v. Wisconsin Employment Relations Board, 315 U. S. 740, 751, 86 L. Ed. 1154, 62 S. Ct. 820, Note 174 A. L. R. p. 1062(3); Bethlehem Street Co. v. N. Y. State Labor Relations Bd., 330 U. S. 767, 773, 91 L. Ed. 1234, 67 S. Ct. 1026; Algoma Plywood Co. v. Wisconsin Emp. Rel. Bd., 336 U. S. 301, 305(1), 93 L. Ed. 691, 69 S. Ct. 584.

[6] Fred Wolferman, Inc. v. Root, 356 Mo. 976, 981(1-4), 204 SW. (2d) 733, 735-8 (2-8), 174 A. L. R. 585, 593, Note. Certiorari denied 333 U. S. 837, 92 L. Ed. 1122, 68 S. Ct. 608; Rogers v. Poteet, 355 Mo. 986, 998-1004 (3-7), 199 SW. (2d) 378, 386-390 (6-8), certiorari denied 331 U. S. 847, 91 L. Ed. 856, 67

**[10]** In this case the injunction petition alleged the relator Allai and his union associate defendants were blocking the public road and entrance to the coal mine by parking automobiles therealong and standing in groups between them, which was a misdemeanor under Sec. 8586, R. S. 1939, Mo. R. S. A. It further alleged that the defendants were accosting persons traveling along the road and demanding to know their personal business and intentions, and thereby intimidating many (non-union, evidently) residents of the vicinity who sought employment at the mine, in violation of Sec. 4635, R. S. 1939, Mo. R. S. A. And finally it alleged the defendants threatened to continue those unlawful acts, and thereby to extort an illegal contract with the defendants' union from the management of the coal mine.

Under the Wolferman case, supra,[6] the pleaded activities of defendants violated the Taft-Hartley Act[7] even though their picketing be deemed peaceful, insofar as those activities tended to coerce the Mining Corporation into influencing its employees to join the defendants' union. For under that Act the employer had no right to encourage or discourage its employees' membership or non-membership in any labor organization as a majority of them might decide. See also 11 A. L. R. 2d, supra, p. 1361, Note. And in our opinion the activities of the defendant union members did not fall within the exception allowed to them in Sec. 8c-158c, supra, of the Taft-Hartley Act, because their activities here were physical and oral, and not merely in graphic form. We are of the further opinion that the defendants' picketing in this instance was in fact not peaceful but forcible, and plainly in violation of the State as well as Federal law.

Relator Allai's brief in his prohibition suit challenges in toto the respondent judge's temporary restraining order in the injunction suit, as issued in six paragraphs lettered (a) to (f) and set out early in this opinion. But our provisional rule in prohibition only requires the respondent to show cause why the rule should not be made absolute as to paragraphs (b) to (f) of the restraining order; and respondent's return deals only with those five paragraphs. In other words, paragraph (a) of the temporary restraining order is not covered in our provisional rule or in respondent's return thereto. Therefore it stands unaffected and confessed on the record.

This unchallenged paragraph (a) enjoined the defendants from hindering, delaying and obstructing persons lawfully travelling the

S. Ct. 1732, rehearing denied 332 U. S. 786, 92 L. Ed. 369, 68 S. Ct. 34; Empire Storage & Ice Co. v. Giboney et al., 357 Mo. 671, 676, 210 SW. (2d) 55. 58(3), affirmed 336 U. S. 490, 93 L. Ed. 834. 69 S. Ct. 50; Gazzam v. Bldg. Employers etc. Union, 29 Wash. (2d) 488, 188 Pac. (2d) 97, 11 A. L. R. (2d) 1330, 1338, Note.

[7]61 Stat., pp. 140-1, §§ 7, 8b, c; 29 U. S. C. A. (Pocket Part) §§ 157, 158b, c.

public road (at the mine) by congregating persons (strikers) and closely parking motor vehicles thereon. And respondent's return asserts the five other paragraphs in the restraining order were complementary to this first one, and necessary to make it effective. We think this is true of paragraphs (c), (d) and (f). But in our opinion paragraphs (b) and (e) of the temporary restraining order were not limited to the coercive obstruction of the public road and entrance to the mining property—which was the real subject matter of the injunction suit—but were leveled against any kind of coercion at any place. For that reason they were too broad and should be stricken from the restraining order.

The last point made in relator Allai's brief is that the respondent judge's temporary restraining order rested entirely upon the prosecuting attorney's verified petition in the injunction suit, and that the factual allegations therein were completely offset and nullified by the allegations in relator's sworn motion to dismiss, in consequence of which there was no evidence upon which to base the restraining order, citing 32 C. J., p. 355, § 590; 43 C. J. S., p. 904, § 196 b.

But in both of these textual works the next section [32 C. J., § 591, 43 C. J. S., § 196 (2)] states the foregoing [11] rule is subject to exception and the discretion of the trial court. In this state the statute does not require the petition for an injunction, either permanent or temporary, to be verified by oath, Sec's 1663, 1664, R. S. 1939, Mo. R. S. A. In one case, Fisher v. Patton, 134 Mo. 32, 54 (4), 33 SW. 451, 457 (4, 5), 34 SW. 1096, 1098 (4), it was held that a petition for a permanent injunction need not be verified, thereby possibly implying a petition for a *temporary* injunction should be. But the decision has never been cited since on that point. However, in this instance the petition was verified by the prosecuting attorney's affidavit. And there is no decision in this state holding the allegations of fact in a verified injunction petition will be nullified by verified controverting allegations of fact in an answer. But actually no such facts were alleged in the motion to dismiss. It contained only a general denial.

For the reasons stated our provisional rule in prohibition is discharged, with directions to the respondent judge to strike out paragraphs (b) and (e) of the temporary restraining order. All concur.