Beck *v.* Neal.

5-1367                                     306 S. W. 2d 875

Opinion delivered November 4, 1957.
[Rehearing denied December 9, 1957.]

*A. F. Barham* and *Henry J. Swift,* for appellant.

*John S. Mosby,* for appellee.

Minor W. Millwee, Associate Justice. This is a suit by the appellant, Ray Beck, doing business as Beck Realty Company, to recover a real estate broker's commission claimed to have been earned upon the sale of a farm by the owners and appellees, C. S. Neal and wife, after the termination of an exclusive listing con-

tract executed by the parties. Trial resulted in a decree dismissing appellant's complaint on several grounds.

After the appellees had previously listed their 160-acre farm with another agent and had advertised it for sale themselves over an extended period without success, the parties executed a written "Exclusive Listing Contract" on November 19, 1955, as follows:

"1. In consideration of the services rendered and to be rendered by Beck Realty Co., hereinafter called the Agent, in selling or exchanging, or assisting in the sale or exchange of, the property described on the reverse side of this contract, C. S. Neal, hereinafter called the Owner, being the sole owner(s) of the property, agrees that the Agent shall have the sole and exclusive agency of sale of the property for a period of until Jan. 1, 1956, from this date, and the Owner authorizes the Agent to sell or contract with the Purchaser for the sale and conveyance of the property by warranty deed according to the price and terms herein given. The Owner may cancel this contract prior to its expiration date by giving 30 day's written notice and payment of $............ to the Agent. The Owner will furnish a complete abstract reflecting title satisfactory to the Purchaser's attorney or furnish title insurance.

"2. If the property be sold or otherwise disposed of by the agent or any other person, association or corporation or owner during the period of this contract, the Owner agrees to pay the Agent FIVE per cent (5%) of the value at which it may be exchanged for other property.

"3. The Owner further agrees to pay the commission set forth in Paragraph 2 to the Agent if the property be sold or otherwise disposed of by any other person, association or corporation, including the Owner, after the expiration of the above listing period, when such sale or other disposition of the property resulted from or was based upon information given by or obtained through the Agent, with notice thereof to the Owner, during the period of this contract.

"4. In the event of f o r f e i t u r e the earnest money shall be divided as follows: The Agent shall first be reimbursed all direct expense incurred in connection with the transaction and the balance shall be divided equally between the Agent and the Owner, but in no event shall the Agent receive an amount in excess of the commission which he would have received if the property had been sold on the basis of the Offer and Acceptance. In event of breach of the terms of this contract by the Owner, the Agent shall be entitled to a lien upon the property, so long as title thereto remains in the Owner or some person in behalf of the Owner, to secure payment of sums which may become due under the terms of this contract."

The back of the written contract contains a description of the farm and other data including the statement, "Gross List Price $80,000.00," and the fact that there was a prior outstanding lien of $23,656.56 against the property in favor of the National Farm Loan Association.

Appellant advertised the farm for sale and his agent, William Edrington, produced several prospective buyers including the appellee, W. J. Alexander Jr., who was introduced to C. S. Neal and wife, shown the place and became interested in purchasing it with the financial assistance of his father-in-law, Lawrence Woodard, who also participated in the negotiations. During such negotiations from December 15, 1955, to January 1, 1956, Woodard, on behalf of Alexander offered a gross price of $72,000.00 and appellant at one time agreed to accept $79,000.00. The parties were unable to agree on the price within the listing period but Alexander testified that a deal would have been consummated in December if Neal had not demanded a "little too much interest."

Shortly after the expiration of the listing period Edrington removed appellant's signs from the property and the appellant mailed too C. S. Neal a list of the prospects contacted in his efforts to sell the place. A few days later Mr. Neal went to appellant's office to

obtain the appellant's copies of the written contract. The evidence is in sharp dispute as to just what took place on this visit and whether appellant had previously agreed to surrender the papers. Neal stated that he delivered to Beck a letter which he had first intended to mail in which he requested "the papers", stated the farm was off the market and rented for 1956; and that the contract time could not be extended but that Beck might get in touch with him again in the fall if he decided to sell. According to Neal, Beck merely handed him the papers and he walked out. Beck testified there was considerable conversation in which Neal used profanity in demanding the contracts. Both Beck and Attorney Malcolm Levenstein who said he was present at the time, testified that Neal said his farm was no longer on the market but he was contemplating a sale to his son in which event he did not intend to pay a commission; that Beck agreed no commission would be due in that event but it was further agreed between them that if a sale was made to one of the prospects furnished by the appellant then Neal would owe and pay the commission. Levenstein appears to be a wholly disinterested witness.

Subsequently direct negotiations between the appellees and W. J. Alexander Jr. and his father-in-law were resumed and the parties were in the process of executing instruments for sale of the place to Alexander for the original gross price of $80,000.00 on or about March 15, 1956, when Mr. Neal stopped the negotiations upon learning that appellant was still contending he was due a commission. On May 22, 1956, there was placed of record a warranty deed dated May 9, 1956, from appellees to W. J. Alexander Jr. and wife conveying the farm for the gross price of $80,000.00 which included the assumption by the grantees of the debt due the loan association of $23,656.36.

In denying a recovery to appellent and dismissing his complaint, the chancellor first found that Paragraph 3 of the written contract was void on its face because it was ambiguous and constituted an inequitable and unreasonable restraint on trade. We do

not find it subject to these objections. Even in the absence of a written agreement .to that effect, we have held in a number of cases that, where a real estate agent employed to sell land introduces a purchaser to the seller, and through such introduction a sale is effected, the agent is entitled to his commission, although the sale was later made by the owner. See *Surbaugh* v. *Dawson,* 185 Ark. 406, 47 S. W. 2d 591, and cases there cited. In several cases beginning with *Scott* v. *Patterson & Parker,* 53 Ark. 49, 13 S. W. 419, we have approved the following statement of the Missouri court in *Tyler* v. *Parr,* 52 Mo. 249: ''The law is well settled that in a suit by a real estate agent for the amount of his commissions it is immaterial that the owner sold the property and concluded the bargain. If after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions. Or if the agent introduces the purchaser or discloses his name to the owner, and through such introduction or disclosure, negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner.''

In *Moore* v. *Holman Real Estate Company,* 129 Ark. 465, 196 S. W. 479, the validity of a provision substantially similar to Paragraph 3 was involved where the sale, as here, was made by the owner about two months after expiration of the exclusive listing period to a purchaser who had been introduced to the owner by the broker. We upheld the contract provision and affirmed a directed verdict for the agent's commission based thereon. See also, *Green* v. *Ozark Land Company,* 204 Ark. 627, 163 S. W. 2d. 325, where the same result was reached under a similar contract provision. Appellees rely particularly on, *Holloway* v. *McArthur,* 224 Ark. 461, 274 S. W. 2d 474, where we held that a broker did not earn his commission by procuring a purchaser who was only willing to take the property on terms different from those stipulated in the listing contract. That is not the situation here.

The chancellor next determined that, even if valid, the provisions of Paragraph 3 were waived by the appellant's agent, Edrington, as an inducement to obtain appellees' signatures to the brokerage contract. While waiver was not pleaded as a defense, appellees did allege that, in signing the contract, they were laboring under a mistake of fact induced by false and fraudulent statements of Edrington. On this point it is undisputed that Mr. Neal was thoroughly familiar with such transactions and carefully read the entire contract before he signed it. However appellees stated and Edrington denied that, before it was signed, the latter pointed to a wavy pencil mark he had made while drafting the contract in the blank space following the dollar sign in Paragraph 1 and stated that, except for the signatures, the contract from that line on "doesn't mean a thing," and that there would be no charges whatever after expiration of the listing period. Even if such testimony were admissible, the fully executed written contract could only have been reformed upon clear, unequivocal and decisive evidence. *Realty Inv. Co.* v. *Higgins,* 192 Ark. 423, 91 S. W. 2d 1030. That test was not met here. But this testimony was inadmissible under the parol evidence rule which precludes the admission of contemporaneous parol evidence to vary or contradict the terms of a valid and unambiguous written contract. *Wright* v. *Marshall,* 182 Ark. 890, 33 S. W. 2d 43. Under the rule any prior oral agreements became merged in the subsequent written contract and were incompetent to vary it.

The trial court also found that appellant was only authorized to sell the farm for cash in the amount of $80,000.00 under the contract; that no purchaser known to appellant purchased or offered to purchase on the exact terms upon which he was authorized to sell it; and the evidence did not warrant the conclusion that appellant was the primary or procuring cause of the eventual sale. As previously indicated, the contract specified a gross sale price of $80,000.00 but there was no requirement that it be paid all in cash. On the contrary it also specified that there was an outstanding loan

against the land of more than $23,000.00. The sale was finally consummated for the exact gross sale price stipulated and on terms clearly contemplated by the parties under their contract. We think a preponderance of the evidence, taken entirely by depositions, supports the conclusion that the sale was based on information given by and obtained through the appellant with notice thereof to appellees as provided in the contract. It was shown that appellant's agent introduced W. J. Alexander Jr. to appellees, showed the property and conducted extended negotiations with both Alexander and Woodard, and that such negotiations were progressing toward the completion of the transaction when the listing period expired. The sale by appellees to Alexander within a reasonable time thereafter upon the exact terms of the listing contract and upon information given and obtained through the appellant, with proper notice to appellees, rendered them liable to appellant for the commission of 5 per cent.

The decree is accordingly r e v e r s e d, and the cause remanded with directions to enter a decree for appellant for his commission in the amount of $4,000.00 with interest at 6 per cent from May 9, 1956, and for further proceedings not inconsistent with this opinion.