**AMERDYNE INDUSTRIES, INC., Appellant,**

v.

**POM, INC., Appellee.**

**No. 84–1801.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 28, 1984.

Decided April 23, 1985.

---

Troy R. Douglas, Fort Smith, Ark., for appellants.

Alston Jennings, Little Rock, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Amerdyne Industries, Inc. (Amerdyne) brought this diversity action against POM, Inc. (POM) for a refund of $25,000 earnest money paid pursuant to a written agreement entered into by the two corporations. Following a bench trial, the District Court[1] dismissed Amerdyne's complaint. Amerdyne appealed, arguing that the District Court's decision is not based on substantial evidence. We affirm.

In September 1979, Amerdyne and POM signed a letter of intent setting forth the terms of an agreement between them. The agreement consisted of a proposal by Amerdyne to purchase the assets and business of POM and provided for the payment by Amerdyne of $25,000 earnest money. The focus of this lawsuit is on paragraphs 14(b) and 14(c) of the letter of intent, which deal with earnest money payment and inspection rights.[2]

---

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

2. These paragraphs state:
   There is hereby delivered to you, as the representative of POM, a check in the amount of $25,000 made payable to the order of POM. This check is for the following purposes and considerations, and shall be utilized in the following manner:

   .     .     .     .     .

   (b) In the event on or before November 16, 1979, Amerdyne advises POM that it desires to proceed with the purchase of the assets referred to herein and with the preparation of definitive agreements relating to such purchase, the following shall be applicable:
   (i) if the transaction thereafter is consummated, the $25,000 delivered herewith shall be applied against the purchase price.
   (ii) if POM refuses to proceed with the consummation of the transaction, the $25,000 shall be returned immediately to Amerdyne.
   (c) In the event on or before November 16, 1979, Amerdyne advises POM in writing that on the basis of the aforementioned examinations and inspections it appears to Amerdyne

In essence, paragraph 14(b) described what would be done with the money paid by Amerdyne in earnest upon notice by Amerdyne to POM, on or before November 16, 1979, that Amerdyne desired to proceed with the purchase referred to in the letter of intent: if the transaction thereafter was consummated, then the earnest money payment would be applied to the purchase price; if POM refused to proceed with the transaction, then the earnest money immediately would be returned to Amerdyne. Under paragraph 14(c), if Amerdyne advised POM in writing on or before November 16, 1979 that it had determined not to proceed with the purchase because the condition of POM had been misrepresented, then POM immediately would return the earnest money to Amerdyne.

It is undisputed that the transaction was never consummated and that, prior to November 16, 1979, Amerdyne did not give POM written notice of its intent not to proceed with the purchase.

Amerdyne's chief contention is that the parties orally agreed in a November 14, 1979 telephone conversation between the principal representatives of the corporations (Robert Cetti of Amerdyne and Mac Van Horn of POM) to an extension of the November 16 deadline for submitting written notice of Amerdyne's intent not to proceed with the purchase. Amerdyne claims that it therefore was entitled under paragraph 14(c) to a refund of the earnest money after it gave written notice on May 9, 1980 of its intent not to proceed.

A written contract may be modified by a subsequent oral agreement. *See Arkansas Aviation Sales v. Carter Construction Company*, 250 Ark. 1007, 469 S.W.2d 118, 119 (1971). However, the proponent of the alleged modification bears the burden of proving with clear, unequivocal, and decisive evidence that the terms of the written agreement were altered or re-

formed by the oral agreement. *Johnson v. Mosley*, 179 F.2d 573 (8th Cir.1950) (interpreting Arkansas law); *APCO Oil Corporation v. Stephens*, 270 Ark. 715, 606 S.W.2d 134, 137 (Ark.Ct.App.1980). The District Court concluded that Amerdyne had not met its burden of demonstrating that the parties had orally agreed to modify the terms of the letter of intent and therefore dismissed the complaint. Amerdyne argues that the District Court incorrectly found that it had not met its required burden of proof.

Amerdyne further argues that this Court, in reviewing the District Court's decision, is not limited by the clearly erroneous standard of Fed.R.Civ.P. 52(a), because whether Amerdyne met its burden of proving that the terms of the letter of intent had been modified is a question of law. We disagree. The construction and legal effect of a written agreement are questions of law *except* where the meaning of the language depends upon disputed extrinsic evidence. *Arkansas Rock & Gravel Company v. Chris-T-Emulsion Company*, 259 Ark. 807, 536 S.W.2d 724, 726 (1976). The issue here turns on disputed extrinsic evidence. Therefore, we must apply the clearly erroneous standard in reviewing the District Court's conclusion that Amerdyne did not meet its burden of proof regarding the modification of the terms of the letter of intent alleged to have occurred during the November 14 telephone conversation.

As noted above, paragraph 14(c) provided that Amerdyne could withdraw from the deal if the reason for its withdrawal was that the condition of POM had been misrepresented and if, on or before November 16, 1979, Amerdyne advised POM in writing that it had determined based on such a misrepresentation not to proceed with the purchase. An examination of POM's records made by Amerdyne

---

that the assets, operations, business, markets, financial condition or operating results of POM differ from the information and representations with regard thereto given to Amerdyne, or its representatives, by POM, or its representatives, and that as a result thereof

Amerdyne has determined not to proceed with the purchase, the $25,000 shall be returned immediately to Amerdyne.
Appendix to Appellant's Brief (Appendix) at 12–13.

after the letter of intent was signed indeed disclosed certain inaccuracies which made the deal less attractive to Amerdyne. Amerdyne nevertheless remained interested in the deal, but desired to have the deal restructured.

Since the November 16 deadline was approaching, Cetti drafted a letter outlining the inaccuracies revealed by the investigation of POM, giving the reasons why Amerdyne intended to withdraw, and demanding return of the earnest money. However, Cetti testified that even though he told Van Horn of the letter, he never mailed it; Cetti was afraid Van Horn's personality was such that receipt of the letter would have meant the end of the deal. It was Cetti's fear of Van Horn's reaction which Cetti claims caused him to choose his words carefully during the November 14 telephone conversation; Cetti wanted to continue negotiating and to make POM aware of this. Cetti testified that he did not specifically discuss with Van Horn the inaccuracies uncovered in Amerdyne's review of POM, did not request return of the earnest money, and did not discuss the circumstances under which the money might be returned.

The District Court considered very carefully the November 14 telephone conversation in trying to determine why Cetti, an experienced businessman, elected not to send the letter which would have given POM notice in accordance with the terms of paragraph 14(c) of Amerdyne's intention not to proceed with the purchase. The court concluded that Amerdyne took a calculated business risk when it did not comply with paragraph 14(c) and instead tried to restructure the deal. The District Court also observed that when Amerdyne finally did give written notice on May 9, 1980 of its intent not to proceed with the purchase, Amerdyne did not mention the November 14 telephone conversation or the modifications allegedly made during that conversation.

With regard to the alleged modification of paragraph 14(c), we hold that the finding of the District Court that Amerdyne failed to meet the necessary burden of proof is not clearly erroneous. Amerdyne did not demonstrate the existence of a subsequent agreement to modify the terms of paragraph 14(c) by clear, unequivocal, and convincing evidence. Amerdyne merely presented proof of an attempt on its part to continue to negotiate.

■ Amerdyne also claims that the November 14 telephone conversation between Cetti and Van Horn advised POM of Amerdyne's desire to proceed with the purchase, that POM thereafter refused to proceed, and that under the terms of paragraph 14(b)(ii) POM thus was required to return the earnest money. Amerdyne admits, however, that this desire to proceed as allegedly communicated in the November 14 telephone conversation was predicated upon a restructuring of the deal; in the November 14 telephone conversation, Amerdyne proposed that the purchase of assets described in the letter of intent be restructured as a stock purchase/redemption. *See* Brief of Appellant at 36–37.

Paragraph 14(b)(ii) entitled Amerdyne to a refund of the earnest money upon POM's refusal to proceed only if Amerdyne first had advised POM of its intent "to proceed *with the purchase of the assets referred to [in the letter of intent].* " Appendix at 13 (emphasis supplied). By its own admission, what Amerdyne gave notice of was an intent to proceed with a transaction other than the purchase of POM's assets as described in the letter of intent. Amerdyne therefore is precluded from obtaining a refund under paragraph 14(b)(ii) by that paragraph's plain language.

The judgment of the District Court is affirmed.